Isiah J. WINBORNE, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

Supreme Court of Delaware.

Submitted: Nov. 12, 1982.
Decided: Dec. 20, 1982.

Karl Haller and William B. Wilgus, Asst. Public Defenders, Georgetown, for defendant below, appellant.

Gary A. Myers, Deputy Atty. Gen., Georgetown, for plaintiff below, appellee.

Before McNEILLY, QUILLEN and HORSEY, JJ.

McNEILLY, Justice:

Following a bench trial in Superior Court, the defendant, Isiah Winborne, was convicted on four counts of Burglary in the Second

Degree, two counts of Theft-misdemeanor, two counts of Criminal Mischief, one count of Robbery in the First Degree, four counts of Attempted Murder in the First Degree, one count of Possession of a Deadly Weapon during the Commission of a Felony, and one count of Resisting Arrest. Of these convictions, defendant appeals the four convictions of Attempted Murder in the First Degree, one count of the Burglary and Theft convictions which involved the home of Joyce Stout, the Robbery in the First Degree conviction and the Resisting Arrest conviction. Defendant contends that there was insufficient evidence in the record to support these convictions.

I

On June 2, 1981 Joanna Joseph returned to her Milton home after running some errands and discovered that her back door had been kicked in and numerous possessions, including jewelry and a stereo had been taken. As she was preparing to call the police, the defendant came into her home and told her his car was stuck. When she referred him to a neighbor, indicating that she had just been burglarized, defendant asked if she had called the police. When she responded no, the defendant took a towel from his neck and began strangling her. As she struggled to free herself, the defendant kept tightening the towel and said, "Sorry Lady." Joseph fell to the floor and the towel was removed. As she lapsed into unconsciousness, she heard a car leaving her home. When she regained consciousness, she ran outside and found her sister's car, which she had just driven home, missing.

Immediately Joseph began to run across the road to the home of her neighbors, the Dickersons. She could not call the police from her home in that the defendant had ripped the phone off the wall. Suddenly, she heard someone running behind her and saw it was the defendant. As she reached the Dickerson driveway, the defendant reached Joseph, grabbed her, pulled her into the bushes, and strangled her with the tow-el again. Again Joseph lapsed into unconsciousness.

When Joseph regained consciousness, she saw her neighbors, Mr. and Mrs. John Dickerson, standing in their garden and struggled toward them. When they saw Joseph, they went to her, carried her into their home and seeing the defendant at the end of the lane, locked all their doors. Mr. Dickerson got his shotgun and scurried to find its shells.

As Mrs. Dickerson was attempting to call the police, Winborne crashed through the locked glass door. He grabbed the phone from Mrs. Dickerson's hand, telling her she was not calling anybody. At this point the defendant saw the shotgun in Mr. Dickerson's hand, which was not loaded, and fled out the door.

Mr. Dickerson, taking the shotgun, followed the defendant, going around the house in the opposite direction. He confronted the defendant with the gun, who told him, "I give up." Then the defendant lunged at Dickerson, grabbed the gun, and smashed the barrel over Dickerson's head with blood streaming from his head, Dickerson slumped to the ground.

Meanwhile, Joseph was still attempting to flee. As she ran past the bleeding Mr. Dickerson, the defendant chased after her yelling "stop lady." Suddenly she was struck on the head by something from behind and she fell to the ground unconscious. When Mr. Dickerson and Joseph finally awoke they went to a neighbor to call the police in that the Dickerson's phone had been ripped off the Dickerson wall.

On June 2, 1981 the police went to Sussex Village in Georgetown in response to information that the defendant could be found there. When they arrived, the defendant fled into the back of the house. As the police tried to bring him into custody, the defendant halfway under a bed, began kicking and scrambling. He was subsequently subdued.

Immediately after being subdued, the defendant consented to a search of the apart-

ment. In the apartment a stereo was found which was concealed in the lining of a chair. The stereo was later identified as belonging to one Joyce Stout and had been stolen in a May 8, 1981 burglary.

## II

Where a defendant urges that the evidence is insufficient to support a guilty verdict, "the relevant question is whether, after reviewing the evidence in the light most favorable to the prosecutor, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979).

■ Defendant's first argument in support of his appeal is that there is insufficient evidence to support his conviction of Burglary in the Second Degree and Theft-misdemeanor in that the State failed to establish that he had exclusive possession of the apartment in which Stout's stereo was found.

This argument misconstrues the scope of the term "exclusive" when used in the permissive inference that a person in possession of recently stolen property is presumed to have stolen the property. As we explained in *Gibbs v. State,* Del.Supr., 300 A.2d 4, 5 (1972):

"The requisites for the inference here under consideration are the same whether recently stolen goods are found in an automobile or in a residence. The basic question in both situations is whether, under the totality of the circumstances, the evidence is sufficient to warrant the conclusion that the defendant had actual possession, i.e., conscious dominion and control over the recently stolen property."

In the instant case the totality of the circumstances clearly permitted the trier of fact to infer from the defendant's possession of the stereo, that he was the person who committed the burglary of Stout's home. The defendant gave the police writ-ten consent to search the apartment, clearly implying that such was exclusively his home. Secondly, the item was found in the lining of a chair, clearly hidden from view. Third, the item was found within a short time after it was taken. Finally, the defendant three weeks after the Stout burglary, admitted taking part in another burglary where similar stereo items were stolen. Given the above, we conclude that when the evidence is viewed in the light most favorable to the State, there was sufficient evidence for a rational trier of fact to conclude that the defendant was in possession of Stout's stereo and that he had stolen it.

## III

Defendant next contends that his conviction for Robbery in the First Degree cannot stand because the evidence presented at trial was insufficient to show that force or threats of force were employed to effectuate the theft of the automobile. This argument is without merit.

■ A person is guilty of robbery when "in the course of committing a theft, he uses ... force upon another person with the intent to (1) prevent or overcome resistance to the taking of the property or to the retention thereof immediately after the taking." 11 *Del.C.* § 831(1). While the phrase, "in the course of committing a theft," requires "a casual connection between the use or threat of force and the theft," *Delaware Criminal Code with Commentary* § 831 at 258 (1973), the code provision does not require that the application of force be contemporaneous with the actual appropriation of the property. It is sufficient under the provision that the force be applied to facilitate the commission of the taking or the retention of the property after it has been appropriated.

■ The evidence shows directly that a Judge, sitting as a trier of fact, could be convinced that the defendant choked Joseph to prevent or overcome her resistance to the theft of the automobile. Joseph entered her house and found that jewelry and a stereo were missing. She immediately

went to the phone to call the police. At this time she was confronted by the defendant who wanted to know whether or not she had called the police. Upon ascertaining that she had not, the defendant began to choke the victim. As Joseph fell to the floor from the choking, she heard her sister's car being driven off by the defendant. The speed with which the defendant got to the car and drove it away demonstrates that he formed the intent to take the car, in order to escape, prior to the choking rather than as a mere afterthought to the physical attack. This contemporaneous use of force to facilitate an escape and secure the automobile constitutes Robbery in the First Degree. Given the above, we conclude that when the evidence is viewed in the light most favorable to the state a rational trier of fact could conclude that the defendant committed Robbery in the First Degree.

## IV

Defendant next attacks his convictions on the four counts of attempted Murder in the First Degree. Three of the counts refer to the assaults on Joseph, while the other count is based upon an assault of John Dickerson. It is defendant's argument that the evidence presented at trial was insufficient to sustain these convictions in that the State failed to prove beyond a reasonable doubt that the defendant intended to kill Joseph or Dickerson.

■ In determining the defendant's intention to kill, the finder of fact may infer, if the other circumstantial evidence justifies the use of the conclusion, that the actor intended the probable and natural consequences of his act. See 11 *Del.C.* §§ 306(c)(1), 307. In the instant case the evidence overwhelmingly supports the conclusion that the defendant had the conscious intent to kill Joseph and Dickerson.

■ After committing a burglary, the defendant returned to Joseph's home. When he became aware of the efforts to call the police, he threw a towel around Joseph's neck and began strangling her. He neither disconnected the phone or mere-

ly threatened Joseph before doing this. It was only when Joseph slumped to the floor, apparently dead, that the defendant fled.

Next the defendant stole a car and began his flight. However, when he observed Joseph leave her house, he took up chase. The unmistakable inference from this is that he intended to finish the job. Indeed once catching Joseph he was not content to gag her, but strangled her again until she passed out.

After this, defendant felt compelled to crash through a glass door of the Dickerson home in order to prevent contact with the police. After running from the house and encountering Mr. Dickerson outside, the defendant did not simply wrest the gun from the elderly gentleman, but he smashed it down on his head, denting the barrel and sending him, bleeding profusely, to the ground.

Finally, the defendant saw Joseph fleeing and in a final effort to silence her, he struck her on the head from behind.

The circumstances outlined above permit a rational inference by the trier of fact that the defendant intended to kill Joseph and Dickerson. As such there was sufficient evidence in the record to justify the convictions on four counts of attempted Murder in the First Degree.

## V

■ Defendant's final contention is that the evidence produced at trial was insufficient to support his conviction for resisting arrest because one officer, who arrived as three officers were trying to pull him kicking and screaming from underneath a bed, failed to inform defendant that he was under arrest.

A person is guilty of resisting arrest if he intentionally prevents or attempts to prevent a peace officer from effectuating an arrest or detention of himself. 11 *Del.C.* § 1257. In the instant case the evidence shows that the police had manifested to defendant their purpose of taking him into

custody and that the defendant resisted those efforts by hiding under a bed and physically resisting the police officers. When viewed in a light most favorable to the State, we find that a rational trier of fact would find the defendant guilty of Resisting Arrest.

For the reasons stated above the judgment of the Superior Court is

\* \* \*

AFFIRMED.