**Bartnell NEWMAN, Defendant Below, Appellant**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

**No. 117, 2007.**

Supreme Court of Delaware.

Submitted: Dec. 12, 2007.
Decided: Jan. 8, 2008.

Bernard J. O'Donnell, Esquire, Office of the Public Defender, Wilmington, DE, for appellant.

James T. Wakley, Esquire, Department of Justice, Wilmington, DE, for appellee.

Before STEELE, Chief Justice, HOLLAND, JACOBS and RIDGELY, Justices and NOBLE, Vice Chancellor.[1]

HOLLAND, Justice.

A grand jury indicted the defendant-appellant, Bartnell Newman, charging him with Delivery of Fentanyl, Possession With Intent to Deliver Fentanyl, Reckless Endangering in the First Degree, Possession of a Controlled Substance within 300 feet of a park and 1000 feet of a school, and Resisting Arrest. A Superior Court jury convicted Newman of Possession with Intent to Deliver Fentanyl, Possession of the Fentanyl within 300 feet of a park and 1000 feet of a school, and Resisting Arrest.[2] The charge of Possession of Fentanyl within 1000 feet of a school was dismissed by the trial judge upon a motion for judgment of acquittal.

The only claim raised by Newman in this direct appeal is that the State presented insufficient evidence for the jury to conclude that he resisted arrest. Newman asserts that the defendant's knowledge of a law enforcement officer's status is an essential element of the offense of resisting arrest under Title 11, section 1257 of the Delaware Code. This appeal was heard *en Banc* because for Newman to prevail, we would have to overrule our prior decision in *Jackson v. State.*[3]

In this opinion, we reaffirm our holding in *Jackson v. State* that knowledge of a law enforcement officer's status is not an essential element of the offense of resisting arrest under section 1257.[4] We also reaf-

---

1. Sitting by designation pursuant to Del. Const. art. IV, § 12 and Supr. Ct. R. 2 and 4.

2. Newman was sentenced to ten years at Level 5, suspended after four years, and fined $5000 for Possession with Intent to Deliver Fentanyl. Newman was sentenced to ten years at Level 5, suspended for eighteen months of Level 3 probation and fined $1000 for Possession of Fentanyl within 300 feet of a park. For Resisting Arrest, Newman was sentenced to one year at Level 5, suspended for one year of concurrent Level 3 probation.

3. *Jackson v. State,* 1999 WL 591502 (Del. May 26, 1999).

4. *Id.*

firm our holding that, although such knowledge is not an essential element of the offense, a defendant may assert his or her lack of knowledge of a law enforcement officer's status as a defense of justification for resisting arrest.[5] That defense, however, was not raised by Newman in this case.

We have carefully reviewed the record. The evidence, when viewed in the light most favorable to the State, is sufficient to support Newman's conviction for resisting arrest.[6] Therefore, the judgment of the Superior Court must be affirmed.

### Facts

On April 28, 2006, Newman approached a blue Blazer driven by Detective Robert Cunningham, who was working undercover for the Wilmington Police Department. Under a prior telephone arrangement, Newman intended to meet Detective Cunningham at a specified location and sell him an undisclosed amount of fentanyl. When Newman came within a foot and a half of the driver-side door, Detective Cunningham exited the Blazer. Detective Pfaff and Officer Ciber, who had been waiting nearby, also moved in to arrest Newman.

Detective Cunningham, although dressed in plain clothes, also wore a black bulletproof vest with police markings on the back, which he testified Newman would probably have been able to read from one and a half feet away. As Detective Cunningham exited his vehicle, Newman fled. While he was running away, Newman dropped a blue glassine bag

packaged in a clear envelope and containing a small amount of fentanyl.

Detective Pfaff caught and tackled Newman as he attempted to escape through a hole in a fence at the entrance of a city park. As Newman struggled with the police officers, he placed an unidentified object into his mouth with his right hand. Believing Newman had swallowed drugs and fearing for his safety, the police transported Newman to the hospital for treatment.

### Delaware Resisting Arrest Statute

Under Title 11, section 1257 of the Delaware Code, "[a] person is guilty of resisting arrest when the person intentionally prevents or attempts to prevent a peace officer from effecting an arrest or detention of the person or another person or intentionally flees from a peace officer who is effecting an arrest." In *Jackson v. State*, we held that knowledge of a police officer's status is not an element of the crime of resisting arrest.[7] Accordingly, "[a] person may be found guilty of resisting arrest without any proof that the accused knew that it was a peace officer attempting to make the arrest." [8]

In *Jackson*, the defendant had requested a jury instruction stating that "in deciding whether Jackson acted 'intentionally,' the jury must find that he knew or should have known that [the arresting officer] was a police officer." [9] The trial judge denied Jackson's request and instructed the jury that "the defendant need not have known that [the arresting officer] was a police officer." [10] We affirmed Jackson's conviction for resisting arrest and held that the

---

5. *Id.*

6. *Winborne v. State*, 455 A.2d 357, 360–61 (Del.1982).

7. *Jackson v. State*, 1999 WL 591502, at *2.

8. *Id.*

9. *Id.* at *1.

10. *Id.*

Superior Court properly declined to "add the element of knowledge to the crime of resisting arrest." [11] In reaching that decision, we relied upon the following Commentary to section 1257: "It will be recalled that this Criminal Code gives no right to resist an arrest by a police officer, whether or not the arrest was lawful and whether or not the accused knew the arrester was a police officer." [12]

### Other Jurisdictions' Statutes

In this appeal, the State's answering brief relies extensively on the opinion of the Florida Third District Court of Appeal in *Polite v. Florida* ("*Polite I*"),[13] which held that knowledge of the victim's status is not an element of the offense of resisting an officer with violence. During the course of the appeal in this case, in *Polite II*, the Florida Supreme Court overruled the holding in *Polite I*.[14] Therefore, we directed the parties to file supplemental memoranda addressing the holding of the Florida Supreme Court.[15]

In *Polite II*, the Florida Supreme Court held that, based upon its interpretation of the language of the Florida statute and an earlier Florida decision, knowledge *was* an essential element of resisting an officer with violence under Fla. Stat. § 843.01.[16] In *Polite II*, the Florida Supreme Court

acknowledged our decision in *Jackson*.[17] In reaching a different conclusion, however, it distinguished the Florida resisting arrest statute from the counterpart Delaware statute on the basis that the Florida statute requires a defendant to "knowingly and willfully" resist a law enforcement officer.[18]

We agree that the texts of the Florida and Delaware resisting arrest statutes are significantly different. In addition, our review of statutory provisions from other jurisdictions involving crimes against law enforcement officers discloses that knowledge of a police officer's status is not an essential element of the crime of resisting arrest in all jurisdictions. It is also apparent from our review that where Congress or a state legislature intends to make knowledge of a law enforcement officer's status an essential element of an offense such a provision is expressly included in the statute's text.[19]

The Delaware resisting arrest statute is similar to its federal counterpart, which was also found to be distinguishable by the Florida Supreme Court in *Polite II*, because the federal statute also does not include the Florida requirement that the defendant act "knowingly and willfully." [20] Under 18 U.S.C. § 111, it is a crime for

11. *Id.* at *2.

12. Delaware Criminal Code with Commentary § 1257 (1973).

13. *Polite v. Florida*, 933 So.2d 587, 589 (Fla. Dist.Ct.App.2006) ("*Polite I*").

14. *Id.*

15. *Polite v. Florida*, 973 So.2d 1107 (Fla. 2007) ("*Polite II*").

16. *See id.*

17. *Id.* at 1116 n. 12.

18. The Florida Supreme Court also noted that it was required to apply a standard of strict

construction to criminal statutes. *Polite II*, 973 So.2d at 1112. Conversely, section 203 of the Delaware Criminal Code expressly rejects strict construction and requires that "the provisions herein must be construed according to the fair import of their terms to promote justice and effect the purposes of the law, as stated in § 201 of this Criminal Code." Del.Code Ann. tit. 11, § 203.

19. *See Polite I*, 933 So.2d 587, 592 n. 11 (collecting statutes). *See also Polite II*, 973 So.2d 1107.

20. *Polite II*, 973 So.2d at 1116, n. 12.

anyone to "forcibly assault[ ], resist[ ], oppose[ ], impede[ ], intimidate[ ], or interfere[ ] with any person designated [as a federal agent] while engaged in or on account of the performance of official duties." [21] In *United States v. Feola,* the United States Supreme Court held that knowledge of an officer's status is *not* a necessary element of assaulting or resisting a federal officer.[22]

In reaching that conclusion, the Supreme Court noted that "the provisions of the section [111] apply to 'whoever' does the act, whether he does it with knowledge of the character of the person whom he acts against and whatever his intent in so acting." [23] The underlying purpose of section 111, the Supreme Court determined, is to both protect federal officers and deter interference with federal law enforcement activities.[24] Consequently, the Court reasoned that to conclude resisting arrest requires knowledge of the officer's status "would give insufficient protection to the agent enforcing an unpopular law, and none to the agent acting under cover." [25]

■ Our prior holding in *Jackson v. State* recognized that the Delaware resisting arrest statute has a purpose similar to the federal statute and affords Delaware law enforcement officers similar protections. Once again, we hold that a defendant's knowledge of a police officer's status

is not an essential element of the offense of resisting arrest under section 1257.[26] As the Supreme Court emphasized in *Feola,* this does not mean "that the defendant's state of mind is never a relevant consideration under § 111":

> The statute does require a criminal intent, and there may well be circumstances in which ignorance of the official status of the person assaulted or resisted negates the very existence of mens rea. For example, where an officer fails to identify himself or his purpose, his conduct in certain circumstances might reasonably be interpreted as the unlawful use of force directed either at the defendant or his property. In a situation of that kind, one might be justified in exerting an element of resistance, and an honest mistake of fact would not be consistent with criminal intent.[27]

In *Jackson v. State,* we reached the same conclusion in construing the Delaware statute.

### *Justification Defense*

■ Although a defendant's knowledge of the law enforcement officer's status is not an essential element of the crime of resisting arrest under section 1257, it can be raised as an affirmative defense under Title 11, section 464. As explained in

---

**21.** 18 U.S.C. § 111 (2000).

**22.** *United States v. Feola,* 420 U.S. 671, 95 S.Ct. 1255, 43 L.Ed.2d 541 (1975). *See also United States v. Ettinger,* 344 F.3d 1149, 1155 (11th Cir.2003) *citing United States v. Feola,* 420 U.S. at 686, 95 S.Ct. 1255 ("to incur criminal liability ... [the defendant] must 'entertain merely the criminal intent to do the acts' ... to forcibly assault resist, oppose, impede, intimidate or interfere with a federal officer 'while engaged in or on account of the performance of official duties.'").

**23.** *Bennett v. United States,* 285 F.2d 567, 570–71 (5th Cir.1960).

**24.** *United States v. Feola,* 420 U.S. at 677–81, 95 S.Ct. 1255.

**25.** *Id.* at 684, 95 S.Ct. 1255.

**26.** *Jackson v. State,* 1999 WL 591502.

**27.** *United States v. Feola,* 420 U.S. at 686, 95 S.Ct. 1255 *citing United States v. Perkins,* 488 F.2d 652 (1st Cir.1973); *United States v. Ulan,* 421 F.2d 787, 789–90 (2d Cir.1970); *United States v. Goodwin,* 440 F.2d 1152, 1156 (3d Cir.1971); and *United States v. Young,* 464 F.2d 160, 163 (5th Cir.1972).

*Jackson,* the Commentary to section 1257 specifically references section 464(4): "Justification: use of force in self-protection." [28] Section 464 reads, in relevant part, as follows:

(a) The use of force upon or toward another person is justifiable when the defendant believes that such force is immediately necessary for the purpose of protecting the defendant against the use of unlawful force by the other person on the present occasion.

. . .

(d) The use of force is not justifiable under this section to resist an arrest which the defendant knows or should know is being made by a peace officer, whether or not the arrest is lawful.

In holding that justification is a defense to the charge of resisting arrest, we stated in *Jackson:*

A person may be found guilty of resisting arrest without any proof that the accused knew that it was a peace officer attempting to make the arrest. The accused may claim justification as a defense, however, and he would be entitled to prevail if he could convince the jury that he did not know or have reason to know that the person making the arrest was a peace officer. [29]

The defense of justification to a charge of resisting arrest has been a part of Delaware's jurisprudence for more than one hundred years. [30] That defense requires the defendant "to produce 'some credible evidence' to support the defense, sufficient to create a reasonable doubt as to the defendant's guilt." [31] Accordingly, when sections 1257 and 464 are read *in pari materia,* the burden is on the accused to establish that he or she did not know the police officer's status. Where a defendant raises the defense of justification to a charge of resisting arrest and proffers some credible evidence to support that defense, the jury must be instructed in accordance with section 464. [32]

In this appeal, we directed the parties to address how a jury should be instructed, pursuant to Title 11, section 464, when a defendant is charged with resisting arrested under Title 11, section 1257. The State submitted the following instruction:

A defense raised by the defendant in this case is justification. Under Delaware law, the use of force upon or toward another person is justifiable when the defendant believes that such force is immediately necessary for the purpose of protecting the defendant against the

---

**28.** *Jackson v. State,* 1999 WL 591502, at *2.

**29.** *Id. See also State v. Winsett,* 205 A.2d 510, 518 (Del.Super.Ct.1964).

**30.** *See State v. Murphy,* 66 A. 335 (Del.Gen. Sess.1907).

**31.** *Hamilton v. State,* 343 A.2d 594, 595 (Del. 1975). In *Hamilton,* we explained that section 461 of the Delaware Criminal Code, made "justification" as defined in section 464 a defense—but not an affirmative defense as to which under section 304, the defendant has the burden of proof by a preponderance of the evidence. *Id.* The Commentary on section 461 states:

This section is not a definition of the defense of justification. An extended definition is given in §§ 462–70. The only purpose of § 461 is to establish the burden of proving justification. Under former Delaware law, it was an affirmative defense, requiring proof by a preponderance of the evidence. In this Criminal Code, it is a simple defense, placing on the defendant an evidentiary burden only. The defendant must come forward with some credible evidence of the existence of facts which make his act justifiable. But he may thereafter have the matter considered by the jury, and if a reasonable doubt as to his guilt is raised by the evidence, he should be acquitted.

**32.** Del.Code Ann. tit. 11, § 303.

use of unlawful force by the other person on the present occasion. Thus, if the defendant did not know or have reason to know that the person making the arrest was a peace officer, then he is not guilty of the charge of resisting arrest. If, after considering all of the evidence tending to support the defense of justification, you find that the evidence raised a reasonable doubt in your mind about the defendant's guilt, you must find [him/her] not guilty of resisting arrest. Any evidence tending to raise this defense must be considered along with all of the other evidence in this case in determining whether the State has satisfied its burden of proving the defendant's guilt beyond a reasonable doubt.

We agree that this jury instruction would satisfy the requirements of section 464, section 1257, and also comport with our holding in *Jackson v. State.*

### State's Evidence Sufficient

■■■ Newman, however, did not raise a justification defense at trial. Instead, after the State presented its evidence, Newman moved for judgment of acquittal on the resisting arrest charge, arguing that there was no evidence in the record that the plain clothes individuals who were chasing him announced they were police officers or told him to stop because he was under arrest. Newman's motion was denied. Because Newman's knowledge of the police officers' status was not an element of the offense,[33] the Superior Court properly instructed the jury that, to convict Newman of resisting arrest, "the State must prove beyond a reasonable doubt that the police manifested to the defendant

their purpose of taking him into custody and that the defendant intentionally resisted their efforts." [34]

■■■ In reviewing a challenge to the sufficiency of the evidence to support a conviction, we must determine "whether a rational trier of fact, considering the evidence most favorable to the prosecution, could find the essential elements of the offense beyond a reasonable doubt." [35] In doing that, we recognize that "it is the sole province of the fact finder to determine witness credibility, resolve conflicts in testimony and draw any inferences from the proven facts." [36]

The record contains sufficient evidence for a rational jury to conclude that Newman knew that the men he ran away from and struggled with were attempting to take him into custody and that he intentionally resisted those efforts. Detective Cunningham testified that Newman came within a foot and half of his car door, and as Detective Cunningham exited his vehicle, Newman immediately began to run away. Although Detective Cunningham was wearing plain clothes, he was wearing a black bulletproof vest with police markings on the back. Detective Cunningham testified that Newman, standing approximately a foot and a half away in the middle of the day, would probably have been able to read the police markings. In addition, Detective Pfaff and Officer Ciber wore similarly marked bulletproof vests as they chased and tackled Newman.

In support of its contention that Newman was running to avoid being taken into custody, the State introduced evidence that as Newman fled, he discarded a clear

33. *Jackson v. State,* 1999 WL 591502.

34. *Winborne v. State,* 455 A.2d 357, 360–61 (Del.1982).

35. *Poon v. State,* 880 A.2d 236, 238 (Del. 2005).

36. *Id.*

plastic bag containing fentanyl. While struggling with the police officers, Newman motioned towards his mouth with his right hand as if he were attempting to swallow drugs.[37] The State asserts that a rational juror could have logically inferred and concluded from Newman's actions that he knew the three persons clad in bullet-proof vests were chasing him for the purpose of taking him into custody, that he intentionally resisted their efforts, and that he knew they were police officers, even though such knowledge is not an element of the offense of resisting arrest. The record supports the State's assertions.

### Conclusion

The judgment of the Superior Court is affirmed.

37. See Commonwealth v. Morales, 447 Pa.Super. 491, 669 A.2d 1003, 1006 (1996) ("Appellant's reaction, by raising his hands to his mouth and placing the light blue glassine packet [containing heroin] inside, readily confirms his awareness that the police were involved in some sort of investigation.").