IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RONALD DAVIS, | § | |
| | § | No. 691, 2013 |
| Defendant Below, | § | |
| Appellant, | § | Court Below–Superior Court |
| | § | of the State of Delaware in |
| v. | § | and for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | |
| | § | |
| Plaintiff Below, | § | Cr. ID No. 1211016788 |
| Appellee. | § | |

Submitted: June 2, 2014
Decided: August 12, 2014

Before **STRINE**, Chief Justice, **HOLLAND** and **RIDGELY**, Justices.

**O R D E R**

This 12th day of August 2014, upon consideration of the appellant's brief filed under Supreme Court Rule 26(c), his attorney's motion to withdraw, and the State's response, it appears to the Court that:

(1)    In September 2013, a Superior Court jury convicted the appellant, Ronald Davis, of Possession of a Deadly Weapon by a Person Prohibited and Resisting Arrest. In December 2013, the Superior Court granted the State's habitual offender motion and sentenced Davis to a total of nine years at Level V. This is Davis' direct appeal.

(2)    On appeal, Davis' trial counsel has filed a brief and a motion to withdraw pursuant to Supreme Court Rule 26(c) ("Rule 26(c)") asserting

that there are no arguably appealable issues. Davis, through his trial counsel, has submitted several points for the Court's consideration. The State has responded to Davis' points and has moved to affirm the Superior Court judgment.

(3)     When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must be satisfied that the defendant's counsel has made a conscientious examination of the record and the law for arguable claims.[1] The Court must also conduct its own review of the record and determine whether the appeal is so totally devoid of at least arguably appealable issues that it can be decided without an adversary presentation.[2]

(4)     The State's first witness was Wilmington Police Officer Gaetan MacNamara. Officer MacNamara testified that shortly after 2:00 a.m. on November 21, 2012, as he was sitting in his patrol car on West Third Street in Wilmington, a green Honda Accord drove through a stop sign and almost struck his car. Officer MacNamara activated the patrol car's overhead emergency equipment and attempted to stop the Accord for the traffic violations. When the Accord failed to stop, a vehicle chase ensued. According to Office MacNamara, over the course of the chase, which lasted

---

[1] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).

[2] *Id.*

for several city blocks, the driver of the Accord disregarded several more stop signs and attempted to elude the police car. Ultimately, when the Accord sustained a flat tire, the driver exited the car and fled on foot into a nearby residential area.

(5) Officer MacNamara and Wilmington Police Officer John Santiago pursued Davis on foot. During the foot chase, Officer MacNamara and Officer Santiago saw Davis throw a dark semiautomatic-style gun into an alley between two houses. Both officers also heard the sound of something metal hitting the asphalt. At that point, Officer MacNamara stopped chasing Davis to secure the area where Davis had thrown the gun. Office Santiago continued chasing Davis down another alleyway where he apprehended him after a brief struggle.

(6) Office MacNamara found a loaded .9 millimeter handgun in the alley where he saw Davis throw the gun. Upon finding the gun, Officer MacNamara alerted the other officers in the area who were looking for the gun, and called for the evidence detection unit to retrieve it. One of the other officers in the area, Wilmington Police Officer Steven Bender, testified that he was standing next to the handcuffed Davis when he heard the shout that the gun was recovered. According to Officer Bender, upon hearing the

3

shout about the gun, Davis looked at him, and said, "I know you all found it. I had the gun, but it ain't mine."[3]

(7)     Officer MacNamara testified that the gun recovered in the alley was loaded with eight .380-caliber rounds of ammunition. Officer MacNamara further testified that when he and other officers executed a search warrant later that day at 102 North Van Buren Street, Davis' listed address, they found "another .380-caliber round, same make, same model" inside an aquarium in the basement.[4]

(8)     In his first point on appeal, Davis claims that the State withheld "potentially exculpatory evidence" when the State obtained a sample of his DNA, "to see if [his] DNA matched the fingerprints on the gun that was found," but then did not submit the sample for testing and did not present any DNA evidence at trial. Because Davis did not raise the claim in the Superior Court, we have reviewed the claim for "plain error."[5] Plain error is error that is "so clearly prejudicial to substantial rights as to jeopardize the fairness and integrity of the trial process."[6]

---

[3] Trial Tr. at 81 (Sept. 5, 2013).

[4] *Id.* at 28-29.

[5] Del. Supr. Ct. R. 8.

[6] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986) (citations omitted).

4

(9)　Contrary to Davis' claim on appeal, Delaware law does not require that the State perform any specific testing on the physical evidence that it gathers.[7]　In the absence of any indication that Davis requested DNA testing or that DNA testing would have affirmatively proven that he did not possess the gun, Davis has not demonstrated that he was prejudiced by the State's decision not to submit his DNA sample for testing and not to present any DNA evidence at trial.

(10)　Davis' second point on appeal alleges a speedy trial violation. When assessing a speedy trial violation, the Court considers four factors: (i) the length of the delay; (ii) the reason for the delay; (iii) the defendant's assertion of the right, and (iv) prejudice to the defendant.[8]　Unless the delay is lengthy enough to be presumptively prejudicial, there is no need to inquire into the remaining factors.[9]

(11)　In this case, it appears from the docket that Davis was convicted on September 5, 2013, approximately nine and one-half months after his arrest on November 21, 2012 and roughly eight months after his indictment

---

[7] *Anderson v. State*, 1999 WL 504332, *2 (Del. Mar. 18, 1999) (citing *Deberry v. State*, 457 A.2d 744, 751 (Del. 1983)).

[8] *Hicks v. State*, 2011 WL 2937393, *2 (Del. July 21, 2011) (citing *Barker v. Wingo*, 407 U.S. 514, 530 (1972)).

[9] *Id.* (citing *Middlebrook v. State*, 802 A.2d 268, 273-74 (Del. 2002).

on January 7, 2013.[10] It further appears that Davis was released on bail on November 29, 2012 and remained out on bail until his conviction on September 5, 2013.[11] Under these circumstances, we do not find the delay in this case to be presumptively prejudicial and conclude without further analysis that Davis' claim of a speedy trial violation is without merit.[12]

(12) In his third point on appeal, Davis claims that the prosecutor misrepresented the evidence in the State's opening statement when he told the jury that "[t]here isn't DNA or gunshot residue" in this case.[13] Because Davis did not object to the asserted prosecutorial misconduct at trial, and the trial judge did not intervene *sua sponte*, we have reviewed the alleged misconduct for plain error.[14]

(13) In an opening statement, a prosecutor "should confine his remarks to evidence he intends to offer which he believes in good faith will be available and admissible, and a brief statement of the issues in the

---

[10] *See* docket at 22, 1 & 2, *State v. Davis*, Del. Super., Cr. ID No. 1211016788.

[11] *Id.*

[12] *See Hughey v. State*, 522 A.2d 335, 341 (Del. 1987) (finding that 10-month delay between arrest and trial was not presumptively prejudicial).

[13] Trial Tr. at 15 (Sept. 4, 2013).

[14] *Williams v. State*, 2014 WL 2803068, at *1 (Del. June 17, 2014) (quoting *Torres v. State*, 979 A.2d 1087, 1093-94 (Del. 2009)).

case."[15] A prosecutor should not "allude to any evidence unless there is a good faith and reasonable basis for believing that such evidence will be tendered and admitted into evidence."[16]

(14) In this case, it appears that the prosecutor did not intend to offer DNA or gunshot residue evidence and did not have a basis for believing that either DNA or gunshot residue evidence would be "tendered and admitted."[17] We therefore conclude that the prosecutor's opening statement telling the jury that the case would not include DNA or gunshot residue evidence was accurate and did not misrepresent the evidence.

(15) In his fourth point on appeal, Davis challenges the sufficiency of the evidence by highlighting several alleged inconsistencies in the testimonies of Officer MacNamara and Officer Santiago. Davis also asserts, as he did at trial, that there was insufficient evidence to prove that he lived at 102 North Van Buren Street, the residence where the police found the ammunition.

(16) In a jury trial, the jury is the sole trier of fact responsible for determining witness credibility, resolving conflicts in the testimony, and for

---

[15] *Hughes v. State*, 437 A.2d 559, 566-67 (Del. 1981) (citing ABA Standards, the Prosecution and Defense Functions § 5.5 (Approved Draft, 1971)).

[16] *Id.*

[17] *Id.*

drawing any inferences from the proven facts.[18] In this case, to the extent Davis alleges inconsistencies in the testimony of Officer MacNamara and/or Office Santiago, it was for the jury to determine the weight of the evidence and to resolve any conflicts in the testimony.[19] Also, the jury was entitled to give more credence to Officer MacNamara's testimony that he had seen Davis "freely enter and exit [102 North Van Buren Street] easily over a hundred times"[20] than to Davis' testimony that he had "never" been there.[21]

(17) In his fifth point on appeal, Davis contends that the Superior Court should have excluded the trial testimony of Officer Santiago because the State was required to disclose Officer Santiago as a witness in pretrial discovery and did not. In the absence of any challenge to Officer Santiago's testimony, we have reviewed the claim for plain error.[22]

(18) Superior Court Criminal Rule 16, which governs discovery, does not require that the State disclose its witnesses prior to trial.[23] To the

---

[18] *Newman v. State*, 942 A.2d 588, 595 (Del. 2008).

[19] *Kane v. State*, 2013 WL 5519823, *2 (Del. Oct. 2, 2013) (citing *Tyre v. State*, 402 A.2d 326, 330 (Del. 1980)).

[20] Trial Tr. at 114 (Sept. 5, 2013).

[21] *Id.* at 88, 111 (Sept. 5, 2013). *Pryor v. State*, 453 A.2d 98, 100 (Del. 1982)

[22] *Wainwright v. State*, 504 A.2d 1096, 1100 (Del. 1986).

[23] *See* Del. Super. Ct. Crim. R. 16(a)(2) (listing information not subject to disclosure). *Accord Quirico v. State*, 2004 WL 220328, *4 (Del. Jan. 27, 2004); *Thompson v. State*, 1991 WL 112884, *3 (Del. June 3, 1991).

extent Davis argues that he suffered prejudice because of an alleged discovery violation by the State, he offers no factual support for that argument.

(19)  The Court concludes that Davis' appeal is wholly without merit and devoid of any arguably appealable issue.  We are satisfied that Davis' trial counsel made a conscientious effort to examine the record and the law and properly determined that Davis could not raise a meritorious claim on appeal.

NOW, THEREFORE, IT IS ORDERED that the State's motion to affirm is GRANTED.  The judgment of the Superior Court is AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

/s/ Henry duPont Ridgely
Justice