# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| v. | ) | Case No. 1903019680 |
| | ) | |
| CRISTIAN MENDEZ-GARCIA | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: October 8, 2019
Decided: October 16, 2019

Isaac Rank, Esquire
Deputy Attorney General
820 North French Street
Wilmington, DE 19801
*Attorney for the State of Delaware*

Thomas A. Foley, Esquire
1905 Delaware Avenue
Wilmington, DE 19806
*Attorney for Defendant*

## MEMORANDUM OPINION AND ORDER
## ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE

Defendant Cristian Mendez-Garcia was arrested and charged for Driving Under the Influence ("DUI") in violation of 21 Del. C. § 4177(a)(1). Defendant timely filed the present Motion to Suppress Evidence ("Motion") in which he seeks to suppress all evidence gathered by the New Castle County Police, including the results of the intoxilyzer test administered to Defendant. Defendant alleges that the field sobriety tests conducted by the officer were not consistent with National Highway Transportation Safety Administration ("NHTSA") standards and that the officer did not have probable cause to arrest Defendant. The State opposes Defendant's Motion, arguing that the field sobriety tests were administered in compliance with

NHTSA. Alternatively, the State argues that absent the field sobriety tests, the officer had probable cause to arrest Defendant based on the officer's observations of the Defendant.

On October 8, 2019, the Court held a suppression hearing. At the conclusion of the hearing, the Court took the matter under advisement. This is the Final Decision of the Court on Defendant's Motion.

## FACTS AND PROCEDURAL HISTORY

On October 8, 2019, the Court held a hearing on Defendant's Motion. At the hearing, State witness and arresting officer Corporal Shultz testified as to her training and experience with DUI cases, as well as the certification process for DUI training.[1] She testified that at approximately 6:30 a.m. on the morning of March 30, 2019, she was on patrol duty and wearing a body camera when she was called out to the area of Danbury Drive in New Castle County, Delaware, for a vehicle collision investigation. Upon arriving at the scene, she approached Defendant, who was standing outside of the vehicle in question.

Corporal Shultz asked Defendant for his registration and insurance card, but Defendant was unable to produce his physical driver's license. While Defendant gathers his registration and insurance information, Defendant admitted to Corporal Shultz that his license was suspended due to entering a guilty plea and being sentenced on a prior DUI. At this time, she observed Defendant smelled of alcohol and had bloodshot eyes. Additionally, Defendant admitted to drinking alcohol on the day in question. Corporal Shultz determined that a collision involving Defendant did occur and testified that pieces of the car light from Defendant's car were found near the victim's car.

---

[1] *See* Def.'s Mot. to Suppress Hr'g (Corporal Shultz testified that she took part in approximately thirty-two hours of DUI detection classroom training, approximately eight hours of wet-lab training and approximately four hours of intoxilyzer training).

2

Corporal Shultz testified Defendant was willing to cooperate with field sobriety tests. Corporal Shultz proceeded to conduct three field sobriety tests including, the horizontal gaze nystagmus test ("HGN"), the walk-and-turn test, and the one-leg-stand test. Corporal Shultz testified that Defendant exhibited all six clues for HGN, two clue for the walk-and-turn test and zero clues for the one-leg-stand test. Ultimately, as a result of the field sobriety tests, Corporal Shultz administered a portable breathalyzer test ("PBT") on Defendant.

During the October 8, 2019, suppression hearing, Corporal Shultz testified that she was wearing a body camera during the March 30, 2019, encounter with Defendant, and that the video fairly and accurately reflected her recollection of the incident. The body camera footage was played during the October 8, 2019, suppression hearing and admitted into evidence. Through this video and audio footage, the Court observed the accident scene and the Defendant's conduct.

Defendant's recorded statements, while perhaps not admissions per say, certainly weigh against Defendant under the totality of the circumstances. The Defendant admitted to backing up too quickly and striking a parked car. On numerous occasions. Defendant made statements using expletive language describing how bad he messed up; that he should have taken an Uber or Lift, and that he had ruined his life. While Corporal Shultz was attempting to administer the HGN, Defendant was having difficulty keeping his head still and struggled to follow the stimulus with only his eyes. Corporal Shultz repeatedly advised Defendant to stop moving his head, and suggested he stop talking and focus on the stimulus. Even after this warning, Defendant continued to make profanity laced quasi-admissions.

Corporal Shultz testified to both her specialized training and the NHTSA standards with regard to the HGN test only. Corporal Shultz did not testify as to her specialized training or the

3

NHTSA standards for the walk-and-turn or one-leg-stand tests. Corporal Shultz did briefly discuss the clues an officer looks for when conducting the walk-and-turn and the one-leg-stand tests.

Corporal Shultz testified that there are eight clues to the walk-and-turn test. According to Corporal Shultz's testimony, there are two stages to the walk-and-turn test. At the first stage, or the instruction stage, there are two clues; (1) that Defendant does not start the test too early; and (2) that Defendant can maintain balance. At the second stage of the test, or the walking stage, there are six clues. The six clues are whether the Defendant; (1) missed a heel to toe; (2) steps off the line; (3) uses their arms for balance; (4) raises arms;[2] (5) turns incorrectly; or (6) stops walking prior to completion of the test.

As for the one-leg-stand test, Corporal Shutlz testified that there are four clues officers look for while conducting the test. The four clues consist of whether Defendant; (1) puts their foot down; (2) uses their arms for balance; (3) sways; or (4) hops.

Following the field sobriety tests, Corporal Shultz administered a PBT. Corporal Shultz testified that it is standard practice to wait fifteen minutes after coming in contact with a defendant to administer a PBT, and that she did wait fifteen minutes before administering the PBT to Defendant. After conducting the PBT, Corporal Shultz arrested Defendant and transported Defendant back to the New Castle County Police Station, where an intoxilyzer test was administered on Defendant.

**PARTIES' CONTENTIONS**

Defendant generally argues that Corporal Shultz's administration of the field sobriety tests were conducted in a manner not consistent with NHTSA standards. Defendant asserts that

---

[2] *See* Def.'s Mot. to Suppress Hr'g (although Corporal Shultz testified that "raising arms" is a clue of the walk-and-turn test, NHTSA does not provide for raising arms as a separate standard. In addition, the officer failed to mention taking the wrong number of steps as a clue, which is included as part of NHTSA standards).

4

Corporal Shultz did not have probable cause to place Defendant under arrest after administering the field sobriety tests. Defendant additionally argues that the length of detention constitutes an arrest of Defendant as it was not "carefully tailored to its underlying justification," and therefore, probable cause for arrest was necessary.[3] Defendant argues the arresting officer did not have probable cause for Defendant's arrest and transportation to New Castle County Police Department.[4] Defendant finally asserts that all evidence gathered in violation of the Fourth Amendment is fruit of the poisonous tree.

The State opposes Defendant's Motion, arguing that the field sobriety tests are admissible and were administered according to NHTSA standards. In particular, the State argues that Corporal Shultz's observation of Defendant during the HGN test are admissible. The State asserts that based on the totality of the circumstances test for probable cause, Defendant's passing results after conducting the walk-and-turn and the one-leg-stand tests do not negate Corporal Shultz's other observations of Defendant. The State also argues that regardless of the admission of the field sobriety tests, the officer had probable cause to arrest Defendant for DUI based on other incriminating observations.

## DISCUSSION

At the heart of the Fourth Amendment to the United States Constitution is the concept of protecting persons from unreasonable governmental intrusions. In *Terry v. Ohio*, the United States

---

[3] *State v. Chandler*, 132 A.3d 133, 143 (Del. Super. Ct. 2015) ("[o]nce Trooper Radcliffe asked Chandler if there was any contraband in his vehicle, the traffic stop was extended into an investigative detention that exceeded the justifying purpose of the stop (i.e. speeding). At this point, the traffic stop ended and it became a second detention that was required to be based on specific and articulable facts which, taken together with all rational inferences, raise an objective suspicion of criminal behavior.").

[4] *See State v. Maxwell*, 624 A.2d 926, 930 (Del. 1993) ("[t]o establish probable cause, the police are only required to present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a crime.").

5

Supreme Court explained, "what the Constitution forbids is not all searches and seizures, but unreasonable searches and seizures."[5] As noted in *Terry*:

[t]he scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances.[6]

Delaware case law follows that probable cause shall be viewed under a totality of circumstances standard based upon the police officers training and experience.[7] Probable cause exists where the facts and circumstances with in the police officer's knowledge, and of which the police officer had reasonably trustworthy information, are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been or is being committed.[8] The State bears the burden of establishing by preponderance of the evidence that the challenged police conduct was not in violation of the defendant's constitutional or statutory protections.[9] On a "motion to suppress, the State must establish, by a preponderance of the evidence, that Defendant's arrest was supported by probable cause."[10] To establish probable cause for a DUI arrest, the state "must present facts which suggest, when those facts are viewed under the totality of the circumstances, that there is a fair probability that the defendant has committed a DUI offense."[11]

---

[5] *Terry v. Ohio*, 391 U.S. 1, 9 (1968).
[6] *Id.* at 21.
[7] *See State v. Wise*, 2016 WL 7468058, at *4 (Del. Super. Ct. Dec. 22, 2016); *see also State v. Reilly*, 2018 WL 7049372, at *3 (Del. Com. Nov. 30, 2018) (Court of Common Pleas found probable cause existed based on officer's observations alone).
[8] *See Bease v. State*, 884 A.2d 495, 498 (Del. 2005) citing *State v. Maxwell*, 624 A.2d 926, 928 (Del. 1993); *see also Brinegar v. United States*, 338 U.S. 160, 175-76 (1949).
[9] *See Hunter v. State*, 783 A.2d 558, 560 (Del. 2001).
[10] *State v. Anderson*, 2010 WL 4056130, at *3 (Del. Super. Ct. Oct. 14, 2010).
[11] *Lefebvre v. State*, 19 A.3d 287, 293 (Del. 2011).

As the trier of fact, the Court is in the best position to determine witness credibility.[12] The Supreme Court of Delaware in *Taylor v. State*, asserts that a "fundamental tenet of American Jurisprudence . . . [is that the] trier of fact [is] responsible for determining witness credibility, resolving conflicts in testimony and for drawing any inferences from the proven facts."[13]

The credibility of Corporal Shultz is not a significant factor in this case as much of her testimony is confirmed by video. At the suppression hearing, the defense questioned her observations regarding the HGN, as the movement of the Defendant's eyes were not observable on video; however, due to the Court's ruling on HGN, this is not material. The Corporal's testimony from the witness stand, and the Court's observations of the Corporal on video, provide the Court no basis to question the witness' credibility.

**A. Field Sobriety Tests**

The Delaware Supreme Court has held that "prior to the admission of HGN evidence the State must provide [a] proper foundation . . . by presenting testimony from an expert with specialized knowledge and training in HGN testing and its underlying principles . . . ."[14] In *Miller*, the Court further explained that "the trial judge abused his discretion by admitting HGN results when the administering officer 'did not testify about the standards set forth in the NHTSA training manual' or 'that the [administered] test was performed in accordance with NHTSA standards.'"[15]

Here, Corporal Shultz was given the opportunity to testify about the standards set forth by NHTSA and whether the HGN test was performed in accordance with NHTSA standards. This

---

[12] *See Bethard v. State*, 28 A.3d 395, 399 (Del. 2011) citing *Knight v. State*, 690 A.2d 929, 932 (Del. 1996) (noting "the trier of fact is 'the sole judge of credibility of the witnesses and is responsible for resolving conflicts in testimony.'").

[13] 679 A.2d 448, 452 (Del. 1996); *see also Newman v. State*, 942 A.2d 588, 595 (Del. 2008) (finding "it is the sole province of the fact finder to determine witness credibility, resolve conflicts in testimony and draw inferences from the proven facts.").

[14] *Miller v. State*, 4 A.3d 371, 374 (Del. 2010) (citing *Zimmerman v. State*, 693 A.2d 311, 314 (Del.1997)); *see also State v. Ruthardt*, 680 A.2d 349, 351–52 (Del. Super. Ct. 1996).

[15] *Id.* at 374.

7

Court finds Corporal Shultz's testimony based on the NHTSA standards of the HGN insufficient to establish a proper foundation. Corporal Shultz did not testify regarding a number of NHTSA standards. By way of example, Corporal Shultz did not testify as to the position of the stimulus. The officer failed to testify regarding the potential false positives an officer may encounter when administering the HGN test, or her ability to rule them out in this case. Here, an accident occurred, which while minor, required the officer to rule out whether the Defendant sustained a head injury. Therefore, the Court finds that the officer's testimony regarding the NHTSA standards for the HGN fail to establish a proper foundation and will not factor into the Court's determination of probable cause.

The State is also required to offer testimony regarding the NHTSA standards for the walk-and-turn test and for the one-leg-stand test and testimony that those standards were in fact followed. The State failed to offer testimony regarding the standards of the walk-and-turn and the one-leg stand tests or testimony regarding Corporal Shultz's training in administering each test. Therefore, Corporal Shultz's administration of the walk-and-turn test and the one-leg-stand test do not weigh as factors in the Court's determination of probable cause. Moreover, the Defendant successfully completed the one-leg-stand test. As for the walk-and-turn test, Corporal Shultz testified to two clues; however, these clues are not evident on the body camera footage.

The Court will not consider the results of Defendant's PBT. Pursuant to well established Delaware law, to admit the results of a PBT test into evidence the "State must lay a proper foundation, by establishing that the police officer properly calibrated the PBT machine, and that the officer had been trained to operate the test."[16] In *State v. Clay*, the Delaware Superior Court

---

[16] *Miller v. State*, 4 A.3d 371, 374 (Del. 2010); *see also State v. Caputo*, 1999 WL 1847363, at *2 (Del. Com. Pl. June 10, 1999) (finding "a proper foundation was laid that the [PBT] machine was calibrated correctly; the Officer was trained to operate the test" prior to giving its results weight).

refused to consider a PBT because the "officer was unable to testify that the unit had been calibrated at all . . . ."[17] Here, the State failed to provide testimony or records regarding Corporal Shultz's PBT calibration. Therefore, the PBT test administered to the Defendant by Corporal Shultz will not weigh as a factor in the Court's determination of probable cause.

Nonetheless, the Court need not rely on the validity of the field sobriety tests in making its determination regarding the existence of probable cause.

**B. Officer's Observations**

Notwithstanding the invalid field sobriety tests, Corporal Shultz had sufficient probable cause to arrest Defendant for DUI. The Delaware Supreme Court in *Bease v. State*,[18] held that probable cause existed in a case nearly identical to the instant matter before the Court. In *Bease*, the Delaware Supreme Court affirmed a Superior Court decision finding probable cause where: (1) the defendant was initially stopped for committing a traffic violation; (2) the officer observed upon subsequent contact with the defendant that the defendant smelled of an alcoholic beverage from an approximate distance of two feet; (3) the defendant stated that he consumed "chardonnay or beer the night before;" (4) the defendant's eyes appeared bloodshot and glassy; and (5) the defendant was speaking rapidly.[19] Like the instant case, the defendant in *Bease* was also unable to produce his driver's license.[20] Decided on these factors alone, the Delaware Supreme Court went on to say;

> [b]ased upon Trooper Penrod's observations and the rational inferences drawn
> therefrom, there existed "a quantum of trustworthy factual information, 'sufficient
> in themselves to warrant a [person] of reasonable caution' to conclude that probable

---

[17] *State v. Clay*, 2002 WL 1162300, at *3 (Del. Super. Ct. May 28, 2002).
[18] 884 A.2d 495, 500 (Del. 2005).
[19] *Id.* at 499–500.
[20] *Id.* at 499.

cause existed" to believe Bease was driving under the influence of alcohol at the time Trooper Penrod stopped him. Accordingly, the Superior Court correctly concluded that the totality of circumstances was sufficient to establish probable cause to test Bease by an intoxilyzer. Consequently, Bease's motion to suppress those test results was properly denied.[21]

The Court concludes probable cause existed based upon the following observations of Corporal Shultz: (1) Defendant was driving a motor vehicle under a suspended license and while doing so struck a parked car; (2) Defendant was unable to provide a valid driver's license to Corporal Shultz; (3) Defendant admitted to Corporal Shultz he was drinking alcohol; (4) Corporal Shultz observed that Defendant smelled of alcohol; (5) Corporal Shultz observed Defendant's eyes were bloodshot. In addition, Defendant's inability to cooperate with Corporal Shultz's administration of the HGN test, Defendant's nervous chatter and numerous quasi-admissions weigh against Defendant in determining probable cause under the totality of the circumstances. Here, there was a substantial basis for Corporal Shultz to conclude that probable cause existed to effectuate an arrest.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** this 16th day of October, 2019, that Defendant's Motion to Suppress Evidence be **DENIED**. The matter is scheduled for trial on October 22, 2019.

The Honorable Carl C. Danberg
Judge

cc:    Dianaja A. Brown, Judicial Case Manage

---

[21] *Id.* at 500.

10