**Wilton KNIGHT, Defendant Below, Appellant,**

v.

**STATE of Delaware, Plaintiff Below, Appellee.**

No. 498, 1995.

Supreme Court of Delaware.

Submitted: Oct. 16, 1996.
Decided: Oct. 28, 1996.

James Folsom, Wilmington, for appellant.

Timothy J. Donovan, Jr., Department of Justice, Wilmington, for appellee.

Before VEASEY, C.J., HOLLAND and HARTNETT, JJ.

HOLLAND, Justice:

The defendant-appellant, Wilton Knight ("Knight"), was convicted for the offenses of trafficking in marijuana, possession with intent to deliver marijuana, use of a vehicle for keeping controlled substances, improper lane change, and failure to properly use a turn signal. Knight remains incarcerated as a result of the sentences he received. This is Knight's direct appeal.

Knight has raised two issues before this Court. First, he contends that the Superior Court erred in denying his motion to suppress the introduction of certain marijuana into evidence. Second, he contends that the Superior Court erred in denying his motion to exclude his confession from being admit-

ted into evidence. We have concluded that neither of these contentions are meritorious.

### Facts *

On January 19, 1995, Corporal Joseph P. Viola, Jr. and his partner Sergeant Alfred J. Homiak ("Sergeant Homiak"), were traveling on I–95 northbound, just north of Route 72, when they observed a Pontiac van traveling in the left center lane of I–95. The van changed from the left center lane to the right center lane without using a turn signal, causing a truck, already traveling in that lane, to brake suddenly. The van then moved to the far right lane but on that occasion used the turn signal. The officers pulled the van over without incident.

The vehicle contained two occupants. Knight was in the driver's seat. A passenger was stretched out and asleep on the passenger's side. Upon request, Knight produced a valid driver's license, a rental agreement for the vehicle, and a military identification card. Sergeant Homiak asked Knight to get out of the van. They both proceeded to a spot on the shoulder between the van and the police vehicle. Sergeant Homiak advised Knight why he had been stopped.

Sergeant Homiak reviewed the rental agreement. It listed Broderick Matticks ("Matticks") as the renter and no other person as the authorized driver. Sergeant Homiak then questioned Knight about Matticks. Knight quickly looked away from the officer, paused, pointed toward the van, and said "his brother." Sergeant Homiak, thinking Knight was referring to the passenger, asked him if that was his brother and what was his name. Knight replied affirmatively and stated that the passenger's name was "Dennis." Upon further questioning, however, he could not identify the passenger's last name.

Sergeant Homiak then asked him why he could not remember the last name of his brother. According to Sergeant Homiak, Knight changed his story and said that the passenger was just a friend, not his brother. Sergeant Homiak again asked Knight who

---

* We have relied extensively upon the recitation of facts set forth in Knight's opening brief.

had rented the vehicle. Knight answered with the correct name of Broderick Matticks.

During the exchange with Sergeant Homiak, Knight was nervous and his responses were evasive. When asked from where the vehicle was coming, Knight paused and while looking away from the officer, stated he would have to think about it. Sergeant Homiak tried to help by telling him he was in Delaware and Maryland was the next state followed by Virginia then North Carolina. Knight then stated he was coming from Virginia although he did not know specifically where in Virginia. On further questioning, he stated that he had left Connecticut to go to Virginia to fix a friend's car. Sergeant Homiak then asked the passenger from where they were coming. He said Arizona. The passenger explained that they had left Connecticut about eight days earlier for Arizona.

Based upon the conflict in the stories, Sergeant Homiak returned to Knight and asked him to have a seat in the police vehicle. Sergeant Homiak asked Knight for permission to search the vehicle. He explained that Knight was suspicious of some type of criminal activity. With both officers and Knight seated in the police vehicle, Sergeant Homiak explained the consent form to Knight. He further explained that he had the right to refuse the search.

After Knight signed the consent form, the officers searched the van but did not find any contraband. The officers did find three cylinders of various colors. Upon removing the three cylinders from the van, the officers noted that the green one was heavier than the other two. It also had a black rubbery substance lubricated around its exterior. The officers rubbed the substance and found a putty substance underneath. This caused them to believe that the cylinder had been altered in some way. The officers then asked Knight to open the valves on the cylinders. The valves operated correctly on two of the cylinders but did not operate on the green one. When questioned about that, Knight replied that it was empty.

Based on their initial observations, the officers asked Knight whether he had any objections to driving to a maintenance yard, approximately two miles away, to further investigate the green cylinder. Knight did not object and accompanied the officers, with the green cylinder, to the maintenance yard. The officers had a representative from a local gas supply company inspect the cylinder. He found that the valve was old and had not been used in some time. He also banged on the cylinder and determined that there was something solid, rather than gas, inside of it.

Based on these observations, the officers asked Knight for permission to search the cylinder. Knight signed a second consent form, approximately an hour and a half after the initial stop. The officers removed the valve from the cylinder and found a substance they believed to resemble marijuana. They then directed the maintenance people to cut the cylinder completely open and found the marijuana, which is the subject of the underlying convictions in this case.

Knight was arrested at the maintenance yard and advised of his *Miranda* rights. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). The arresting officers then transported Knight back to Delaware State Police Troop Six, where they called Detective John Campanella ("Detective Campanella") of the Special Investigation Unit and Agent Larry Whitfield ("Agent Whitfield") of the Drug Enforcement Agency. Agent Whitfield and Detective Campanella went in to interview Knight. When Agent Whitfield read Knight his *Miranda* rights again, Knight told the agent that he wanted a lawyer. The interview was terminated immediately.

Approximately twenty minutes later, however, Detective Campanella received a message that Knight wanted to talk to the officers. Detective Campanella then contacted Agent Whitfield. They went back to the interrogation room. After a short discussion to determine that Knight had in fact changed his mind and did not want a lawyer, the officers began questioning him again. The questioning ultimately led to the confession, which was introduced at trial in the State's case-in-chief.

## Consent Valid

Prior to the trial, Knight moved to suppress the evidence (thirty-four pounds of marijuana) found in the green cylinder that he was transporting in the van. He argued that his consent to open the cylinder was not voluntary because it was the product of a long detention. The trial judge denied the motion. The Superior Court ruled that the police detention of Knight was legal at its inception. The Superior Court found that Knight's decision to accompany the officers to the maintenance yard and his consent to search the green cylinder were voluntary.

■ Voluntariness is determined by a judicial examination of the circumstances surrounding the consent. *Schneckloth v. Bustamonte,* 412 U.S. 218, 248–49, 93 S.Ct. 2041, 2058–59, 36 L.Ed.2d 854 (1973). The State has the burden of proving that the consent was not coerced. *Id.* at 248, 93 S.Ct. at 2058–59. The trial judge's determination that a defendant's consent was voluntary will not be set aside on appeal unless that finding is clearly erroneous.

■ The record reflects Knight's consent to open the gas canister was voluntary and not the result of duress or coercion. *Id.* Knight accompanied the officers to the maintenance yard without objection. He then signed the consent form for the search of the green cylinder. Knight's written consent states that it was given voluntarily. *Scott v. State,* Del.Supr., 672 A.2d 550 (1996).

■ By the time the police cut open the cylinder, they had already withdrawn a small amount of what appeared to be marijuana from the valve-end opening. At this point they had probable cause to believe that the cylinder contained contraband. *United States v. Strickland,* 11th Cir., 902 F.2d 937 (1990). The Superior Court properly denied Knight's motion to suppress the introduction of the marijuana into evidence.

## Confession Admissible

■ Knight's second contention is based upon *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). In *Edwards,* the United States Supreme Court held that "an accused ... having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police." *Id.* at 484–85, 101 S.Ct. at 1885. When a defendant moves to suppress a statement under the *Edwards* rule, the trial judge must determine: first, whether the accused actually invoked his right to counsel; and second, if so, whether the accused initiated further communication with the police, and then knowingly and intelligently waived the right he had previously invoked. *Smith v. Illinois,* 469 U.S. 91, 95, 105 S.Ct. 490, 492–93, 83 L.Ed.2d 488 (1984); *Crawford v. State,* Del.Supr., 580 A.2d 571, 574 (1990).

■ In this case, the police testified that although Knight initially invoked his right to counsel, within 30 minutes, he changed his mind and initiated further contact with the police, telling them he wanted to make a statement. The police also testified that before initiating further questioning, they made certain that Knight no longer wished to consult with an attorney. *Smith v. Illinois,* 469 U.S. 91, 105 S.Ct. 490, 83 L.Ed.2d 488 (1984). Knight testified to the contrary. As a matter of credibility, the trial judge rejected Knight's testimony and accepted that of the police.

■ It is well-settled that the trier of fact "is the sole judge of the credibility of the witnesses and responsible for resolving conflicts in the testimony." *Tyre v. State,* Del. Supr., 412 A.2d 326, 330 (1980). The record supports the trial judge's finding that Knight initiated further discussion after invoking his right to counsel, and that he knowingly and intelligently waived his right to counsel before questioning began. *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). The Superior Court properly denied Knight's motion to exclude his confession from being admitted into evidence at trial.

## Conclusion

The judgments of the Superior Court are AFFIRMED.