# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE

# IN AND FOR NEW CASTLE COUNTY

STATE OF DELAWARE      )
)
)
v.             )    Cr.A. No.: 1311020126
)
)
)
ROBERTO M. De JESUS-MARTINEZ,  )
)
)
Defendant.       )

Submitted: 7 November 2014
Decided:  5 December 2014

Kristina Kontis, Esquire
Deputy Attorney General
Delaware Department of Justice
820 N. French Street, 7th Floor
Wilmington, DE 19801
   *Attorney for the State*

Michael W. Modica, Esquire
715 King Street, Suite 300
P.O. Box 437
Wilmington, DE 19899
   *Attorney for Defendant*

**DANBERG, J.**

## DECISION ON DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL UNDER RULE 29(a) AND DECISION AFTER TRIAL

Defendant Roberto M. De Jesus Martinez ("Martinez") was arrested on December 1, 2013 and charged with the offense of harassment in violation of 11 *Del. C.* Section 1311(a)(2). Martinez was arraigned on January 17, 2014, and waived his right to a Jury Trial. A bench trial was held on August 18, 2014. This is the Court's decision after trial.

1

## PROCEDURAL BACKGROUND

On December 1, 2013, Martinez was arrested and charged with harassment. On January 17, 2014, he pled not guilty, and requested a trial by jury. On April 2, 2014, Martinez waived his right to trial by jury, and trial was set for May 28, 2014. On May 28, 2014, trial was continued to August 18, 2014.

At the defendant's bench trial, the State called two witnesses, the victim, Julissa Baez ("Baez") and Corporal Jesus Caez ("Corporal Caez") of the Wilmington Police Department, who was the investigating and arresting officer.

After the state rested, Martinez, through counsel, made a timely Motion for Judgment of Acquittal. The Court reserved decision. After which, the defense rested, and the Court took the matter under advisement. On September 19, 2014 the State Supreme Court issued a decision in *Lum v. State*, in which the court ruled that it was error to reserve on a Motion for Judgment of Acquittal made prior to the close of evidence.[1] Because of the apparent applicability of *Lum* to the present case, the court requested legal memoranda from the parties. Written arguments were due to be submitted on or before 7 November 2014. In his communication with the court and counsel on *Lum*, the defendant averred the Court's error was not prejudicial to the defense, obviating the need for further argument or briefing on the issue. This is the Court's ruling on both the Motion for Judgment of Acquittal under CCP Criminal Rule 29(a) and the Decision after Trial.

## FACTS

The Court finds the following facts based upon the evidence presented. The parties know each other because Baez and Martinez are related. Martinez is Baez's maternal uncle. Baez was

---

[1] *Lum v. State*, Del. Supr., 2014 WL 4667089 at *2 (Sep. 19, 2014).

2

close with Martinez, but the relationship began to deteriorate two years prior to this incident, when Baez was subpoenaed to testify about Martinez's actions in an unrelated case.

Subsequently, on November 28, 2013, Baez created a Thanksgiving Facebook "post" containing pictures of Baez and her family. The State introduced the Facebook page with the pictures into evidence.

Comments on the picture were written and posted to her Facebook page in Spanish. The State introduced the comments and subsequent Facebook comments into evidence. Baez translated these comments as "[t]he war is not over. Let me get off of probation and the war will start. Soon the actions will speak for themselves." After reading the post, Baez was fearful of what Defendant would do to carry out his threats. The threats came from her uncle, Martinez. Baez knew the comments were written by Martinez because the name next to the comment listed "Robert De Jesus" as the user, and the picture was of Martinez. Although Baez and Martinez were not "Facebook friends" at the time of the post, they had been "friends" previously, and Baez is familiar with the picture he uses as his Facebook picture. She confirmed the posted comments were from Martinez and the associated picture was the one he uses on his Facebook page. Further, in her Thanksgiving post, Baez "tagged" an aunt who is friends with "Carmen," another aunt of Baez. Carmen is Facebook friends with Martinez, which explains how Martinez was able to access Baez's Facebook page. Baez went to the Wilmington Police Department and was referred to Corporal Caez. Thereafter, Baez relocated to an undisclosed location out of fear that Martinez would carry out his threats against her.

Corporal Caez has worked for the Wilmington Police Department since March 2010. His duties primarily consist of handling 911 calls and patrol, and he is frequently assigned to cases in which the language used by those involved is Spanish because he speaks Spanish fluently.

Corporal Caez testified that on November 28, 2013, just after midnight, his Sergeant assigned him to this case in order to translate as needed. Baez showed Corporal Caez a phone with the above referenced Facebook comments. The Corporal translated the messages and found that Baez's translation was accurate. After securing an arrest warrant, Corporal Caez went to Martinez's home and arrested him.

The Court, as the trier of fact, is the sole judge of the credibility of the witnesses. The Court finds the State's witness to be credible and candid. Throughout her testimony on both direct and cross examination, Baez appeared cooperative and frank.

## PARTIES' CONTENTIONS

First, Martinez contends that the State has not proven a *prima facie* case of harassment. Specifically, Martinez argues that the State did not provide sufficient evidence or lay a foundation sufficient to authenticate that the comments were written by Martinez. Martinez argues that the State only offered circumstantial evidence that suggested that it was Martinez. In support of this, Martinez contends that anyone who had access to Martinez's Facebook page could have written the comments. Second, Martinez argues that, even if he was the one who authored the post, there is no evidence that the comments were intended for Baez because they were not Facebook friends. Martinez asserts that he would not have known that the comment would get back to Baez because they were not Facebook friends, and therefore he lacked the *mens rea* to commit the crime, therefore he is not guilty.

The State argues that there is sufficient evidence to prove harassment. Baez testified that she knew it was Martinez, and recognized his name, his photograph, and identified the photograph as the one he uses on Facebook. Baez further testified that after reading his

4

comments, she felt afraid and worried, not knowing how far Defendant would go to carry out his threats to her. Further, the State argues it has established the manner in which Martinez accessed the Facebook photos. Concerning the second claim, the State posits that the fact that the comment by Martinez was posted in a forum in which Martinez had reason to know they would be seen by Baez, and the comment itself suggests it is intended for the recipient. The Court reserved Judgment on the Motion, and the Defense rested.

## DISCUSSION

### A. Motion for Judgment of Acquittal

The standard for the Court to enter a judgment of acquittal is high under Delaware law. Motions for Judgment of Acquittal are governed by Court of Common Pleas Criminal Rule 29(a), which provides that the Court, either upon motion or *sua sponte*, must enter a judgment of acquittal for an offense "if the evidence is insufficient to sustain a conviction of such offense."[2] In the case *sub judice*, this requires the State to establish that the noted Facebook post originated from Defendant, and that it was intended to reach Baez.

The judgment of acquittal motion "is tantamount to the former motion for directed verdict."[3] A judgment of acquittal is a judicial determination that the case should not go to the jury.[4] A motion for acquittal will only be granted where the State has offered insufficient evidence to sustain a verdict of guilt.[5] In determining whether to grant the motion, the Court must consider all evidence in a light most favorable to the State.[6]

Delaware law provides that "a person is guilty of harassment when, with intent to harass, annoy or alarm another person:

---

[2] Ct. Com. Pl. Crim. R. 29(a).
[3] *State v. Biter*, Del. Super., 119 A.2d 894, 898 (1955).
[4] *Id.*
[5] *Id.*
[6] *Id.*

5

(2) Communicates with a person by telephone, telegraph, mail or any other form of written or electronic communication in a manner which the person knows is likely to cause annoyance, or alarm..."[7]

In ruling on the Motion, the Court must determine if the State met its burden to establish a prima facie case the defendant communicated with the victim with the requisite knowledge and intent. To do so, the State must establish Martinez communicated with the defendant and he did so with the intent to harass, annoy or alarm.[8]

Considering the evidence in the light most favorable to the State, it is clear the State has met its burden. The State presenting Baez's testimony that the posts in question did in fact come from comments that were written by Martinez. The name next to the comments listed "Robert De Jesus" as the user, and the picture was of Martinez and his two children. Baez had personal knowledge that Martinez was in fact the user because Baez testified that, prior to being subpoenaed to testify against Martinez in another case, she was friends with Martinez on Facebook, had interacted with him via his profile page and so was familiar with his Facebook page. She indicated the photograph that appeared with the comment at issue was his Facebook photo. Additionally, the State introduced evidence of the familial connections shared between Baez and Martinez, and established that despite the fact that the parties were no longer friends, Martinez could reasonably gain access to Baez's page through family members that were friends with both Baez and Martinez, and would thus have a reason to know the comments would reach the intended target. The threats themselves offered contextual references to Martinez's life, supporting the State's contention the comments originated from Martinez. A reasonable jury could conclude that Martinez did so knowing and intending the comments to get back to Baez.

---

[7] 11 *Del. C.* §1311(a)(2).
[8] *Id.*

Martinez's threats over social media infer that he intended the natural and probable result – the creation of fear in Baez. Finally, the testimony by Baez at trial shows that she interpreted Martinez's threats over social media to be serious – Baez relocated to an undisclosed location out of fear that Martinez would carry out his threats against her. Viewing the evidence in the light most favorable to the State, the Motion for Judgment of Acquittal must be and is hereby **DENIED**.

## B. Decision After Trial

The State has a burden of proving each and every element of this offense beyond a reasonable doubt.[9] As established case law indicates, a reasonable doubt is not a vague, whimsical or merely possible doubt, "but such a doubt as intelligent, reasonable, and impartial men may honestly entertain after a conscientious consideration of the case."[10] A reasonable doubt "means a substantial, well-founded doubt arising from a candid and impartial consideration of all the evidence or want of evidence."[11]

Delaware law defines Harassment as follows:

> A person is guilty of harassment when, with intent to harass, annoy or alarm another person:
>
> (2) Communicates with a person by telephone, telegraph, mail or any other form of written or electronic communication in a manner which the person knows is likely to cause annoyance or alarm including, but not limited to, intrastate telephone calls initiated by vendors for the purpose of selling goods or services;[12]

---

[9] 11 *Del. C.* § 301. *See State v. Matushefske*, Del. Super., 215 A.2d 443, 448 (1965); *see also McDade v. State*, Del. Supr., 693 A.2d 1062, 1064 (1997).

[10] *Matushefske*, 215 A.2d at 449.

[11] *State v. Wright*, 79 A. 399, 400 (Ct. Gen. Sess. 1911); *State v. Bennet*, 2010 WL 5140762, at *3 (Del. Com. Pl. Nov. 29, 2010).

[12] 11 *Del. C.* §1311.

The Court as trier of fact is the sole judge of the credibility of each fact witness. If the Court finds the evidence presented to be in conflict, it is the Court's duty to reconcile these conflicts, if reasonably possible, so as to make one harmonious story of it all. If the Court cannot do this, the Court must give credit to that portion of the testimony which, in the Court's judgment, is most worthy of credit and disregard any portion of the testimony which in the Court's judgment is unworthy of credit. In doing so, the Court takes into consideration the demeanor of the witness, their apparent fairness in giving their testimony, their opportunities in hearing and knowing the facts about which they testified, and any bias or interest that they may have concerning the nature of the case. The linchpin of this case is whether the State has proven the Facebook comment originated from the Martinez. To so prove, the State must establish the authenticity of the Facebook comment.

Under the Delaware Rules of Evidence, a social media post is a communication that requires authentication before it can be admitted into evidence. To be admissible, there must be "sufficient evidence presented to support a finding that the matter in question is what the proponent claims."[13] Rule 901(b) provides that:

> Authentication of social media can include: (1) testimony from a witness who states that the evidence is what it claims to be, (2) distinctive characteristics of the evidence itself, such as appearance, contents, substance, internal patterns or other distinctive characteristics, taken in conjunction with the circumstances that can authenticate the documentary evidence, or (3) evidence that shows that the documentary evidence is accurately produced through a process or system.[14]

In order for the State to rely on the Facebook posts purportedly authored by Martinez, the State must present sufficient evidence that establishes that the Facebook post is, in fact, what the

---

[13] D.R.E. 901(a).

[14] *Parker v. State*, Del. Supr., 85 A.3d 682, 684 (2014) (discussing D.R.E. 901(b)(1), (4) and (9) as examples of authentication or identification).

8

State claims it to be, that is, a communication of a threat by Martinez to Baez. Martinez claims that the State has failed to meet its burden in this respect because the State failed to authenticate the Facebook posts as Martinez's. The instant case is analogous to *Parker v. State of Delaware*, in which the Delaware Supreme Court held that a post on the Defendant's social media network page indicating her involvement in an assault was sufficiently authenticated as being authored by the Defendant.[15] In discussing the relevance and authentication of social media, the court in *Parker* remarked that:

> Social media has been defined as forms of electronic communications, through which users create online communities to share information, ideas, personal messages, and other content. Through these sites, users can create a personal profile, which usually includes the user's name, location, and often a picture of the user. On many sites, such as Facebook or Twitter, a user will post content...to that user's profile page delivering it to the author's subscribers. Often these posts will include relevant evidence for trial, including party admissions, inculpatory or exculpatory photos, or online communication between users.[16]

In *Parker*, the Delaware Supreme Court, in analyzing the potential methods in authenticating social media evidence, adopted the "Texas approach."[17] Authenticating electronic evidence depends upon the facts and circumstances of the particular case.[18] The *Texas* Court found that this could include "direct testimony from a witness with personal knowledge, comparison with other authenticated evidence, or circumstantial evidence."[19] Furthermore, the Court held that the standard for determining the admissibility of evidence is "whether a jury could reasonably find the proffered evidence authentic."[20] In holding that the State has sufficiently authenticated the defendant's social media posts and pictures, the *Texas* Court found

---

[15] 85 A.3d at 688.

[16] *Id.* at 685 (internal citations omitted).

[17] The Delaware Supreme Court found that, in analyzing this alternative approach of authentication, the case *Tienda v. State of Texas*, 358 S.W.3d 633 (Tex. Crim. App. 2012) best represented this method.

[18] *Tienda*, 358 S.W.3d 633, 639 (Tex. Crim. App. 2012).

[19] *Parker*, 85 A.3d at 687 (quoting *Tienda*, 358 S.W.3d at 638).

[20] *Id.* at 688

9

that the combination of facts, including photos and contextual references to the defendant's life, was circumstantial evidence sufficient to support a finding by a rational jury that the [social media] page offered into evidence was created by the Defendant.[21] In adopting this approach, the *Parker* Court concluded that "social media evidence should be subject to the same authentication requirements under the Delaware Rules of Evidence Rule 901(b) as any other evidence."[22]

In the instant case, the Court as the trier of fact is "the sole judge of the credibility of witnesses and responsible for resolving conflicts in testimony."[23] Here, the State satisfied the requirements established by *Parker* by presenting Baez's testimony that the posts in question did, in fact, come from comments that were written by Martinez. The name next to the comments listed "Robert De Jesus" as the user, and the picture was of Martinez and his two children. Baez had personal knowledge that Martinez was in fact the user because Baez testified that, prior to being subpoenaed to testify against Martinez in another case, she was friends with Martinez on Facebook, and interacted with him via his profile page. She indicated the photograph that appeared with the comment at issue was his Facebook photo. Additionally, the State introduced evidence of the familial connections shared between Baez and Martinez, and established that despite the fact that the parties were no longer friends, Martinez could reasonably gain access to Baez's page through family members that were friends with both Baez and Martinez. The threats themselves offered contextual references to Martinez's life, discussing his status as a probationer, and what would potentially occur after his probation ended. The State has met the standard codified in Rule 901(b), and illustrated in *Parker*, by introducing evidence sufficient

---

[21] *Id.* at 645.
[22] *Parker*, 85 A.3d at 687.
[23] *Knight v. State*, Del. Supr., 690 A.2d 929, 932 (1996).

10

that a reasonable jury could reasonably find the document to be authentic. Furthermore, because this proceeding is a bench trial, the Court as the sole trier of fact has the discretion to determine the credibility of witnesses, and the weight to give to testimony and evidence. The Court finds Baez to be credible, and her testimony to be adequately supported by circumstantial evidence. Accordingly, this Court finds that the circumstantial evidence offered is more than sufficient to establish that Martinez is the author of the comments.

Turning to Martinez's second argument that he lacked the *mens rea* to commit the crime of harassment because he did not intend the comments to reach Baez, the Court finds this defense without merit.[24] Delaware has long settled the issue that so long as the offender performed the act, absent legal justification or provocation, he intended the natural and probable consequences of the design of the act.[25] Martinez's comments were not general in nature, and posted in response to a picture simply depicting a happy Thanksgiving scene, but were directly aimed at the victim. Further, Martinez chose to publish the comments in a forum to which mutual relations had access. A reasonable jury could conclude that Martinez did so knowing and intending the comments to get back to Baez. Martinez's threats over social media infer that he intended the natural and probable result – the creation of fear in Baez. Finally, the testimony by Baez at trial shows that she interpreted Martinez's threats over social media to be serious – Baez relocated to an undisclosed location out of fear that Martinez would carry out his threats against her.

The facts above indicate that Martinez possessed a clear intent to harass, annoy, or alarm Baez. As stated above, Martinez, by publishing the comments in a forum on which mutual relatives could read them, intended the natural and probable result of the design of that act,

---

[24] Even casual users of social media sites such as Facebook quickly learn that writing a comment on a post created by another user, even if the two are not friends, will be seen by the creating user on his or her profile page.
[25] *See* 11 *Del. C.* § 306(c)(1); *see also Bantum v. State of Delaware*, Del. Supr., 85 A.2d 741, 751 (1952).

culminating in the creation of fear in Baez. Baez's apprehension is demonstrated by her act of relocating based on her perception of imminent danger posed by Martinez. Therefore, the State has proven that Martinez acted with intent to harass, annoy or alarm.

Therefore, the Court finds that the State has proven each element of the crime of harassment beyond a reasonable doubt.

## ORDER

**IT IS HEREBY ORDERED** that Defendant's Motion for Judgment of Acquittal is **DENIED.**

For the foregoing reasons, on the charge of harassment in violation of 11 *Del. C.* Section 1311(a)(2), the Court finds Defendant Robert De Jesus Martinez **GUILTY.** The Defendant is to be scheduled for sentencing before this Judicial Officer.

**IT IS SO ORDERED.**

The Honorable Carl C. Danberg,
Judge

cc:     Faye Holmes, Judicial Case Manager

12