# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| CHRISTINA MILLER,<br>        Plaintiff, | ) ) ) ) ) | |
| v. | ) ) | |
| STATE FARM FIRE AND CASUALTY,<br>        Defendant/Third- Party<br>        Plaintiff, | ) ) ) ) | C.A. No. CPU4-13-002525 |
| v. | ) ) ) | |
| ANDREA MILLER,<br>        Third-Party Defendant. | ) ) ) | |

Submitted: February 12, 2014
Decided: March 24, 2015

Michael C. Heyden, Esquire
Law Offices of Michael C. Heyden
1201 North King Street
Wilmington, Delaware 19801
*Attorney for Plaintiff*

Robert K. Pearce, Esquire
824 Market Street, Suite 1000
Wilmington, DE 19899
*Attorney for Defendant/*
*Third-party Plaintiff*

Andrea Miller
17510 South DuPont Highway
Harrington, DE 19952
*Pro se Third-party Defendant*

## DECISION AFTER TRIAL

This action was initiated as a breach of contract action for Defendant State Farm's failure to pay Plaintiff Christina Miller ("Plaintiff") $10,000.00 allegedly owed under Plaintiff's insurance policy following damage from a storm. The matter evolved into a dispute between Plaintiff and Third-party Defendant Andrea Miller ("A. Miller") regarding their respective rights to the proceeds of the State Farm policy. Trial in the above-captioned matter took place on Wednesday, December 10, 2014 in the Court of Common Pleas, New Castle County, State of Delaware. At the close of each party's presentation, the Court reserved decision. This is the Court's decision and order on the relief requested by the parties.

## PROCEDURAL BACKGROUND

On July 30, 2013, Plaintiff filed a complaint against State Farm Fire and Casualty Company ("State Farm"), alleging that State Farm breached the parties insurance agreement when it failed to pay proceeds due under Plaintiff's insurance policy following damage from a storm.[1] On September 11, 2013, Plaintiff filed an affidavit for entry of default judgment against State Farm for want of an answer. Default was entered that same day. On February 11, 2014, State Farm filed an answer, and motion to vacate on the grounds of excusable neglect and having a meritorious defense. The Motion to Vacate was granted on March 10, 2014.

Subsequently, the parties stipulated to an amended answer, which was filed on April 1, 2014. The amended answer included a cross-claim for interpleader, alleging that the insurance policy named a second individual, A. Miller, and also alleging that State Farm had tendered a check for $9,880.45, made out to Plaintiff and A. Miller. The parties stipulated to a third-party complaint for interpleader to be filed against A. Miller. The third-party complaint was filed on April 8, 2014, contending that A. Miller is a named insured under the insurance policy, and is therefore an indispensible party to this action. On June 10, 2014, A. Miller filed a third-party answer admitting that she has a potential insurable interest in the insurance proceeds for the aforementioned loss, and agreeing that Plaintiff and A. Miller should be required to interplead to determine the respective rights of the insurance proceeds,[2] but denying the remaining allegations of the third-party complaint.

On September 19, 2014, State Farm filed a Motion for Interpleader and Summary Judgment. State Farm requested leave to deposit $10,000.00 into a bank account controlled by

---

[1] On July 31, 2013, Plaintiff filed an amended complaint adding affirmative defenses.
[2] *See* Third-Party Answer, ¶ 7(a).

2

the Court, to be divided between Plaintiff and A. Miller in a manner to be determined by the present litigation. State Farm requested dismissal from the case upon the deposit of the funds into a Court-controlled account, as the only remaining concern – how the proceeds are divided up – does not concern State Farm.[3]

On October 3, 2014, the Court granted State Farm's motion. State Farm deposited the funds, and was dismissed from the action. State Farm's request for attorneys' fees and court costs was denied.

A bench trial took place on Wednesday, December 10, 2014. At trial, the Court heard testimony from Plaintiff and A. Miller, and documentary evidence was submitted by both parties.[4][5] Plaintiff contends that A. Miller has no insurable interest in the home and is therefore not entitled to any of the funds due under the policy. A. Miller counters that because her name remains on the mortgage note for the property, she has an insurable interest and the funds should be split equally in order to avoid a windfall to Plaintiff. A. Miller argues in the alternative that her name should be removed from the titling documents for the property, or an accounting mechanism for how the insurance proceeds are spent should be put in place.[6]

## FACTS

Plaintiff testified for her case-in-chief. According to Plaintiff, in August 2004, she sold her property at 411 Aldwich Drive in Newark, Delaware in order to purchase a new home. She received proceeds from the sale approximating $25,000.00. On August 16, 2004, Plaintiff used the proceeds to purchase real property at 16 Morning Dew Drive in Middletown, Delaware. The

---

[3] The parties stipulated that the damage in question was caused by sump pump failure, which caused more damage than the policy's limits.

[4] Plaintiff's Exhibits 1 through 9 and Defendant's Exhibits 1 through 3 were admitted into evidence.

[5] After taking the matter under review, the Court concluded additional documents were necessary and ordered the parties to submit the documents for consideration.

[6] Although A. Miller did not plead a counter-claim, at trial, she stated that she seeks the above relief sought.

3

deed, dated August 16, 2004, lists Plaintiff as the sole purchaser.[7] Plaintiff testified that the deed and subsequent mortgage to the Morning Dew property has always been in her name alone, and that A. Miller did not contribute to the purchase price of the home.[8] Nevertheless, Plaintiff acknowledged that she and A. Miller resided in the home together in a domestic relationship.

After the purchase of the Morning Dew property, Plaintiff, A. Miller and A. Miller's two sons occupied the premises. Plaintiff testified that she alone made and continues to make the monthly payments for the mortgage, property taxes, and insurance premium. At some point the Morning Dew property was re-financed, and A. Miller was added as a co-signer on the note.[9] A. Miller contributed to food and miscellaneous items unrelated to mortgage, taxes, and insurance. Miller's income fell with the housing crisis of 2007, and she did not work for three years. During this time, Plaintiff paid all bills. The parties ended their relationship in May of 2010 and A. Miller moved out and took all of her belongings with her.

In August of 2011, the damage which is the subject to the instant litigation occurred. A storm caused flooding of six inches of water throughout the basement of the residence due to a sump pump failure.[10] Plaintiff then made a claim to State Farm.[11] Plaintiff submitted photographical evidence of the damage sustained to the property as a consequence of the sump

---

[7] Plaintiff's Exhibit 1.

[8] None of the exhibits proffered into evidence by the parties contains the mortgage note in question. After trial, the Court requested additional briefing on the matter, and submission of the mortgage in effect as of August 2011, the period in which the property damage occurred. On February 12, 2015, Plaintiff submitted the deed, which is already in evidence as Plaintiff's Ex. 1. Plaintiff stated that she does not have a copy of the mortgage documents. Defendant Andrea Miller did not respond to the Court's request.

[9] Although Andrea Miller is not listed on the deed to the house, she testified that she was listed on the subsequent re-finance of Morning Dew, which led to her addition to the State Farm insurance policy for Morning Dew.

[10] As stated *supra*, the parties stipulated that the damage was caused by the sump pump's failure.

[11] Plaintiff's Exhibits 2, 3, 6. It should be noted that neither party has submitted the operative insurance policy provided by State Farm.

4

pump's failure during the storm.[12] The photographs document damage to seven basement doors; flooring which needs to be reinstalled; drywall and molding; and other miscellaneous damage.

State Farm attempted to tender two payments of $6,900.04 and $2,980.45 on November 1, 2011 and November 10, 2011 respectively.[13] The checks were made payable to Plaintiff and A. Miller.[14] Plaintiff has refused to accept any checks which contain A. Miller's name as a payee.

A. Miller testified for her defense. A. Miller testified that both parties signed the re-finance note because neither could afford the home alone, and as a result her name had to be placed on the State Farm insurance policy.[15] She further testified that the expenses of the home were shared, paying some of the expenses related to the mortgage, property taxes, and insurance; at certain times making payment directly to Plaintiff.[16] Miller admitted that she has not lived in the home since May of 2010.

The uncontroverted evidence establishes that 16 Morning Dew Drive is owned by Plaintiff. The only damage sustained was to the home; Miller suffered no personal damage that is recoverable under the policy.

## LEGAL STANDARD

The Court was the trier of fact, and therefore the Court was "the sole judge of the credibility of witnesses and responsible for resolving conflicts in testimony."[17]

---

[12] Plaintiff's Exhibit 9.

[13] Plaintiff's Exhibits 4-5. The amounts paid represent State Farm's estimate of damages insured against under the policy.

[14] *See* Defendant's Exhibits 1-3. Upon a review of the insurance policy, State Farm informed Plaintiff that Miller is also listed on the policy, and as a result any payment must be made to both Plaintiff and Miller.

[15] As previously stated, Andrea Miller did not present evidence or produce documents in response to the Court's request.

[16] No documentation of the alleged payments was offered into evidence.

[17] *Knight v. State*, 690 A.2d 929, 932 (Del. 1996).

5

18 *Del. C.* § 2706 provides, in pertinent part:

(a) No contract of insurance of property or of any interest in property or arising from property shall be enforceable as to the insurance except for the benefit of persons having an insurable interest in the things insured as at the time of the loss.

(b) "Insurable interest" as used in this section means any actual, lawful and substantial economic interest in the safety or preservation of the subject of the insurance free from loss, destruction or pecuniary damage or impairment.

(c) The measure of an insurable interest in property is the extent to which the insured might be directly or indirectly indemnified by loss, injury or impairment thereof.

However, "public policy has framed law to prevent one from insuring the property of another for his or her own benefit."[18]

## DISCUSSION

### a. ANDREA MILLER'S OWNERSHIP INTEREST

A. Miller contends that she has an ownership interest in the property because she was a co-signer on two subsequent refinances of the property, and was accordingly placed on the State Farm policy as a result. Plaintiff counters that although A. Miller's name appears on the refinancing documents and the State Farm policy, the fact that she moved from the property fifteen months before the damage occurred, and has not made any contributions toward payments of the mortgage, insurance policy, or property taxes show that she has no insurable interest in the property.

As the Delaware Superior Court stated in *Draper v. Delaware State Grange Mutual Fire Insurance Company*:

> A contract of insurance is essentially a personal contract. It is not a contract to insure property against fire, but is one to insure the owner of property against loss by fire. Destruction by fire of the property described in the contract of insurance is not the

---

[18] *Malloy v. Fidelity & Guar. Co.*, 1992 WL 179511, at *3 (Del. Super. Ct. Jun. 16, 1992).

6

contingency upon which the insurer promises to indemnify the insured. *It is only when by fire the insured has sustained a loss* that the insurer may be called upon to perform its contract of indemnity.[19]

The exhibits, coupled with the testimony of the parties, fail to illustrate that A. Miller has sustained a loss, because she failed to demonstrate an insurable interest in the property. A. Miller's name does not appear on the deed to the property.[20] Moreover, at trial, A. Miller did not submit documentary evidence of the refinancing documents. The Court provided an opportunity for Miller to correct this error via its request for additional documentation; however, A. Miller did not respond. As a party asserting a counter-claim that the mortgage and refinancing documents grant her an insurable interest in the property, and thus one-half of the proceeds under the policy, A. Miller bears the burden to produce the documents allegedly proving her interest. She did not meet her burden of proof.

Additionally, uncontroverted evidence indicates that A. Miller moved from the property more than a year before the storm, taking all of her personal property with her. This would mean that, absent evidence of homeownership or a mortgage refinance in effect at the time of the storm, A. Miller did not have an insurable interest in the property, and thus did not sustain a loss that is covered by the insurance policy.

Finally, Plaintiff's testimony revealed that she was and is the sole financial contributor to the Morning Dew property. Plaintiff testified that while she has made out-of-pocket expenses to repair the damage caused by the storm, A. Miller has not contributed to the repairs either financially or labor-wise.[21] Therefore, based on A. Miller's failure to claim any loss from the

---

[19] 91 A. 206, 207 (Del. Super. 1914)(Internal citations omitted)(emphasis added).
[20] *See* Plaintiff's Ex. 1.
[21]*See* Plaintiff's Ex. 8.

7

storm, along with her departure from the property fifteen months before the storm and failure to contribute financially to the property's repair after the storm, the Court finds that A. Miller does not have an insurable interest in the property.

Accordingly, the Court awards the proceeds of the State Farm Insurance policy to the Plaintiff and will not grant half of the proceeds to A. Miller. To do otherwise would result in a windfall to A. Miller.

Regarding A. Miller's alternative requests for relief, it is not within the Court's jurisdiction to create and administer a trust.

## ORDER

After consideration of the arguments presented at trial, in addition to the filings of the parties, **IT IS HEREBY ORDERED** that judgment is entered in favor of Plaintiff Christina Miller in the amount of $10,000.00, to be paid from the proceeds of the State Farm insurance policy for 16 Morning Dew Drive, Middletown, DE 19709.

**IT IS FURTHER ORDERED** that Defendant Andrea Miller's name is to be removed from any existing mortgage or titling documents for 16 Morning Dew Drive, Middletown, DE 19709.

**IT IS SO ORDERED this 24th day of March, 2015.**

The Honorable Carl C. Danberg,
Judge

cc:     Tamu White, Judicial Case Management Supervisor

8