# IN THE COURT OF COMMON PLEAS FOR THE STATE OF DELAWARE
# IN AND FOR NEW CASTLE COUNTY

|  |  |  |
|---|---|---|
| STATE OF DELAWARE | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 1607003537 |
| | ) | |
| | ) | |
| FELIX HUTCHINSON | ) | |
| | ) | |
| Defendant. | ) | |

Submitted: January 30, 2019
Decided: February 6, 2019

Anthony J. Hill, Esquire
Deputy Attorney General
820 N. French Street, 7th Floor
Wilmington, DE 19801
*Attorney for the State of Delaware*

Raj Srivatsan, Esquire
Assistant Public Defender
900 N. King Street, 2nd Floor
Wilmington, DE 19801
*Attorney for Defendant*

## DECISION AFTER TRIAL

The defendant, Felix Hutchinson (hereinafter "Defendant"), was charged with Offensive Touching against Patrick Harsha (hereinafter "Mr. Harsha"), a Wilmington Housing Authority ("WHA") security guard. Defendant stood trial on August 6, 2018. During trial, Defendant moved for dismissal of the case based on the State's failure to provide Defendant with 911 recordings. The Court denied the Motion to Dismiss in a Memorandum Opinion and Order on January 30, 2019. Defendant also moved for a judgement of acquittal, which was denied by the Court at trial and again in the Court's Memorandum Opinion and Order on Defendant's Motion to Dismiss. This is the Final Decision and Order of the Court after trial.

## FACTS AND PROCEDURAL HISTORY

On September 3, 2017, Defendant was charged with Offensive Touching, in violation of 11 *Del. C.* § 601(a)(1). The incident took place June 30, 2016, when Mr. Harsha was working nightshift as a security guard for WHA. Mr. Harsha testified at trial that he heard a person screaming around 3:00 a.m., while making his rounds to the WHA housing sections he patrolled. Shortly thereafter, Mr. Harsha made contact with Defendant on Garden Court in Madison Gardens, located in Wilmington, Delaware. Mr. Harsha testified at trial that upon making contact, Defendant was observed in the parking lot yelling and screaming random statements. Mr. Harsha, who was in uniform, exited his WHA vehicle and advised Defendant to return to his residence. Defendant was not compliant with Mr. Harsha's request. Mr. Harsha also noticed a strong odor of alcohol emanating from Defendant. Subsequently, Mr. Harsha walked away from Defendant to call the Wilmington Police Department ("WPD"). After that call, Defendant was screaming at Mr. Harsha, telling him to leave and move his vehicle. Mr. Harsha advised Defendant that he was unable to leave until Defendant returned to his residence. It was at that time that Defendant began punching and kicking Mr. Harsha's vehicle. Mr. Harsha again called WPD and notified them of the developments. Defendant then attempted to gain entry into Mr. Harsha's vehicle, but Mr. Harsha was able to prevent Defendant's access. Defendant then attempted to take Mr. Harsha's security badge and pins from Mr. Harsha's uniform, at which time a short fight ensued.

Upon Defendant's attempt to take Mr. Harsha's badge and pins, Mr. Harsha swatted Defendant's hands away. Defendant responded by striking Mr. Harsha in the face, causing Mr. Harsha to defend himself and strike Defendant. Defendant fell and hit his head on the ground and proceeded to stand up and take another swing at Mr. Harsha unsuccessfully. Defendant fell multiple times during the exchange and kept getting back up, attempting to strike Mr. Harsha

2

again. Mr. Harsha was able to notify a co-worker of the struggle via a two-way radio. Eventually, Defendant struck Mr. Harsha in the back of the head and the parties fell to the ground wrestling until Mr. Harsha was finally able to restrain Defendant until police arrived.

Wilmington Police responded to a complaint of a disorderly person on the 200 block of Garden Court. Senior Corporal Matthew Cavanaugh (hereinafter "Sr. Cpl. Cavanaugh") responded to the scene. Upon Sr. Cpl. Cavanaugh's arrival, he observed other WPD officers assisting Mr. Harsha while Mr. Harsha had Defendant pinned to the ground. Officers had then placed Defendant in handcuffs and detained him in the back of a police vehicle to secure the scene and interview both parties. While police attempted to interview Defendant, Defendant kept screaming and yelling irrelevant utterances. After two attempts, police were unable to obtain an answer from Defendant regarding what had happened. Sr. Cpl. Cavanaugh could smell alcohol emanating from Defendant during contact. Sr. Cpl. Cavanaugh stated at trial that upon interviewing Mr. Harsha, Sr. Cpl. Cavanaugh observed Mr. Harsha's clothes to be disheveled as if he had been in a fight and Mr. Harsha's speech to contain high and low pitches consistent with adrenaline.

While police were interviewing Mr. Harsha, a loud banging noise was heard coming from the police vehicle where Defendant was detained. Upon inspection, Sr. Cpl. Cavanaugh found Defendant with a new laceration on his forehead and blood on the plexiglass partition in the back seat of the vehicle. Sr. Cpl. Cavanaugh then provided Mr. Harsha with a card containing the report number and advised him to make an in-person complaint at the Justice of the Peace Court 20, as the offense was a misdemeanor that occurred outside the presence of law enforcement. Sr. Cpl. Cavanaugh then proceeded to transport Defendant to the hospital to seek treatment of the self-inflicted laceration on Defendant's head. Defendant continued to bang his head in the back of Sr.

3

Cpl. Cavanaugh's vehicle while being transported. Subsequent to the incident, Sr. Cpl. Cavanaugh filed an incident report and Mr. Harsha executed a citizen's warrant for the offense.

## DISCUSSION

The State must prove beyond a reasonable doubt that Defendant "intentionally touche[d Mr. Harsha] . . . with a member of his . . . body . . . knowing that [Defendant was] thereby likely to cause offense or alarm to [Mr. Harsha]."[1] As explained during trial, the Court finds that the State has met its burden.[2] This case turns on credibility of the parties' witnesses. "It is well-settled that the trier of fact "is the sole judge of the credibility of the witnesses and responsible for resolving conflicts in the testimony."[3] In a non-jury trial, the credibility of witnesses is a question of fact for the Court to decide. The Court's decision shall be "sufficiently supported by the record and [be] the product of an orderly and logical deductive process."[4] The Court "should consider each witness's means of knowledge; strength of memory; opportunity to observe; how reasonable or unreasonable the testimony is; whether it is consistent or inconsistent; whether it has been contradicted; the witnesses' biases, prejudices, or interests; the witnesses' manner or demeanor on the witness stand; and all circumstances that, according to the evidence, could affect the credibility of the testimony."[5]

Testifying for the State was Mr. Harsha and Sr. Cpl. Cavanaugh. Testifying for the defense was Defendant. After hearing testimony, the Court finds the State's witnesses to be consistent and

---

[1] 11 *Del. C.* § 601(a)(1).

[2] In resolving the motions presented, the Court necessarily reviewed 911 tapes *in camera*. As those tapes were not presented during trial, they are given no weight in determining guilt or innocence.

[3] *Knight v. State*, 690 A.2d 929, 932 (Del. 1996). *See also State v. De Jesus-Martinez*, 2014 WL 7671040, at *2 (Del. Com. Pl. Dec. 5, 2014).

[4] *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972).

[5] Del. P.J.I. Civ. § 23.9 (2000) [pattern jury instructions for civil cases].

4

compelling. The Court does not agree with Defendant's contention that the testimony of the State's witnesses are "majorly inconsistent." Both Mr. Harsha and Sr. Cpl. Cavanaugh described that Defendant smelled of alcohol, appeared intoxicated, was acting irrationally and struck Mr. Harsha. The Court finds the inconsistencies in their testimony to be immaterial to the charge of offensive touching. Furthermore, Defendant testified during trial that he was outside with his boom box, singing to music at 3:00 a.m. while waiting for his brother to get off of work so that they could celebrate his brother's birthday. Defendant conceded at trial that he did not comply with Mr. Harsha's request to return to his residence. Defendant also admitted during trial that he had obtained an alcoholic beverage for this occasion but had only consumed a small shot prior to the incident.

The Court is not persuaded that Defendant was first attacked by Mr. Harsha and then again by the police as Defendant implies. Rather, the Court finds that Defendant was not forthcoming during his testimony about his level of intoxication and Defendant's account of events was significantly divergent from the two State witnesses. With regard to credibility, the Court finds Mr. Harsha significantly more credible than Defendant. The Court paid particular attention to the demeanor of each witness on the stand, their willingness to answer questions from opposing counsel and their frankness about their own memory failings. Mr. Harsha was emotional in his testimony, and appeared to be honestly attempting to fully answer all questions posed to him regardless of the source. Mr. Harsha was also candid about his memory lapses and was clearly frustrated by his inability to recall every detail. In contrast, Defendant was notably more cooperative with his own counsel than with the State's attorney and appeared less than candid about his alcohol consumption.

## CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** this 6th day of February, 2019, that Defendant be found **GUILTY** of Offensive Touching pursuant to 11 *Del. C.* § 601(a)(1). The matter will be scheduled for sentencing before this Judicial officer.

The Honorable Carl C. Danberg
Judge

cc:    Shawn Johnson, Judicial Case Manager