IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| WILFREDO AVILA SILVA, | § | |
| | § | |
| Defendant Below, | § | No. 450, 2025 |
| Appellant, | § | |
| | § | Court Below—Superior Court |
| v. | § | of the State of Delaware |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID No. 2406007888 (N) |
| | § | |
| Appellee. | § | |

Submitted: May 6, 2026
Decided: June 26, 2026

Before **SEITZ**, Chief Justice; **TRAYNOR** and **LEGROW**, Justices.

## <u>ORDER</u>

After consideration of the brief and motion to withdraw filed by the appellant's counsel under Supreme Court Rule 26(c), the State's response, and the Superior Court record, it appears to the Court that:

(1) A Superior Court jury found the appellant, Wilfredo Avila Silva, guilty of first-degree assault and possession of a deadly weapon during the commission of a felony. The charges stemmed from an incident that occurred on June 15, 2024. On the previous evening, Cesar Mayorga and Oriel Garcia went out to celebrate Garcia's birthday. They met some women they knew—Bella, Sandy, and Erica—at a bar in Wilmington. After drinking and dancing until the early morning hours, the group stood outside the bar talking. Silva approached and spoke to Garcia and the women;

he invited the group to his home. Garcia drove himself and Mayorga, and Erica drove the women; they followed Silva to the Cloverleaf Trailer Park.

(2)     At an empty lot at Cloverleaf, Mayorga accepted a beer from Silva and talked to Erica about his stepson's cousin, Lupe Bagoda, who had been killed two years earlier. Garcia was talking to Silva. Mayorga believed that Silva overheard his conversation about Bagoda and laughed about the killing. Mayorga became uncomfortable and decided to leave, and he got into the front passenger seat of Garcia's vehicle. But Garcia did not want to leave, so Mayorga began attempting to order an Uber. Before Mayorga could complete that process, Silva opened the passenger door and attacked him with a kitchen knife that was approximately one foot long and two inches wide, saying that he was going to kill Mayorga. Mayorga raised his left arm to block the knife while he attempted to defend himself with his right hand, and Silva stabbed Mayorga's left arm. Mayorga unbuckled his seat belt, moved onto the console, and kicked at Silva, and Silva stabbed Mayorga's leg. Mayorga escaped from the vehicle and Silva chased him until Mayorga got back into the vehicle and locked the door. Silva hit at the glass, but Garcia got into the driver's seat and drove away.

(3)     Garcia drove to Chalet Drive, about five minutes away from Cloverleaf. Sara Depolo was looking out the door of her residence on Chalet Drive and saw a large silver SUV rapidly drive up and stop. Depolo sent her husband outside to

2

investigate; he returned to the house to get some rags because one of the two men in the SUV was bleeding profusely. Depolo went outside and saw the driver speaking on his cell phone, "presumably with 911." She saw that the man sitting in the passenger seat of the SUV had a large gash on his arm and his pants were saturated with blood. Depolo testified that Mayorga was "very lethargic and kind of out of it" and that he said that "the Dominicans" had stabbed him.

(4) New Castle County Police Officer Andrew Huneke arrived at Chalet Drive at 7:10 a.m. Mayorga had suffered severe blood loss and was still actively bleeding. Huenke applied a tourniquet to Mayorga's arm. Emergency medical personnel arrived and transported Mayorga to Christiana Hospital, where he was treated for his injuries. A forensic nurse examiner who examined Mayorga in the emergency room documented that Mayorga told her that he and his assailant had been arguing about Mayorga's cousin who had been killed two years ago when the assailant pulled out a sharp object and stabbed him.

(5) Back at Chalet Drive, Garcia told an officer that the assailant was dark skinned, wearing a blue shirt and blue pants, and was about five feet and seven inches tall and weighed approximately 175 pounds. Garcia provided another officer with the assailant's phone number. A law enforcement database identified the phone number as belonging to Silva. After the chief investigating officer identified Silva as a suspect, Detective Eric Christopher went to the hospital and presented Mayorga

3

with a six-photo array that included Silva; Mayorga identified Silva as the man who stabbed him.

(6) Other officers responded to the Cloverleaf Trailer Park. They did not find any weapons or physical evidence indicating a struggle.[1] Surveillance video from a nearby residence captured sounds of yelling at approximately 6:47 a.m., and residents of nearby homes reported that they had heard people outside partying at around 6:00 a.m. In a Chevrolet Equinox that was parked near the empty lot and registered to Silva's former romantic partner, they found Silva's palm prints, the same type of beer bottle that they also found in Garcia's truck, a Puerto Rican identification card bearing the name "William Oma Nazario Castillo," and a cell phone with Silva's photograph as the background picture. When the police arrested Silva at a gas station on July 24, 2024, he identified himself as William Oma.

(7) A Superior Court jury found Silva guilty of first-degree assault and possession of a deadly weapon during the commission of a felony. The jury found Silva not guilty of terroristic threatening. The Superior Court sentenced Silva to a total of twenty-seven years of imprisonment, suspended after seven years for decreasing levels of supervision.

---

[1] An officer observed what appeared to be blood on the doorway of a nearby home and notified other officers, but the substance was never collected or tested. At defense counsel's request, the Superior Court provided a missing-evidence instruction to the jury, over the State's objection.

(8)    In this direct appeal, Silva's counsel has filed a brief and a motion to withdraw under Supreme Court Rule 26(c). Counsel asserts that, based upon a conscientious review of the record, there are no arguably appealable issues. Counsel informed Silva of the provisions of Rule 26(c) and his right to supplement counsel's presentation. Silva responded with points he wanted to present for the Court's consideration, which counsel included with the Rule 26(c) brief. The State has responded to the Rule 26(c) brief and argues that the Superior Court's judgment should be affirmed.

(9)    When reviewing a motion to withdraw and an accompanying brief under Rule 26(c), this Court must be satisfied that the appellant's counsel has made a conscientious examination of the record and the law for arguable claims.[2] This Court must also conduct its own review of the record and determine whether "the appeal is indeed so frivolous that it may be decided without an adversary presentation."[3]

(10)    Silva argues that no physical evidence was found at the alleged crime scene, such as a weapon or blood; there was no video evidence of the incident; and no eyewitnesses of the stabbing testified except Mayorga. He claims that the police investigation of the crime was inadequate. Silva contends that Mayorga's testimony

---

[2] *Penson v. Ohio*, 488 U.S. 75, 83 (1988); *McCoy v. Court of Appeals of Wisconsin*, 486 U.S. 429, 442 (1988); *Anders v. California*, 386 U.S. 738, 744 (1967).
[3] *Penson*, 488 U.S. at 82.

was unreliable, emphasizing that Mayorga's blood alcohol content was .255 approximately two hours after the incident and pointing to evidence of cocaine use found in Garcia's vehicle. He asserts that police found Mayorga five minutes away from the alleged crime scene, and no one called 911 from the scene. He challenges Mayorga's account of the incident as physically impossible and emphasizes the absence of fingerprint and DNA evidence linking Silva to Garcia's vehicle. Silva notes that Garcia and Mayorga provided inconsistent descriptions of the assailant's physical characteristics and ethnic heritage; he also points to a computerized dictation in Mayorga's medical record that indicates that Mayorga stated that his cousin stabbed him.

(11) We construe these arguments as a claim that the evidence was insufficient to support Silva's conviction. Silva did not seek a directed verdict or a judgment of acquittal in the Superior Court. If a defendant did not make such a motion to the trial court in a jury trial, we review claims of insufficient evidence for plain error.[4] "Plain errors are material defects that are apparent on the face of the record, which are basic, serious, and fundamental in their character, and which

---

[4] *Lecompte v. State*, 2025 WL 2641454, at *6 (Del. Sept. 15, 2025); *Williamson v. State*, 113 A.3d 155, 157 (Del. 2015).

clearly deprive an accused of a substantial right, or which clearly show manifest injustice."[5]

(12) We find no plain error here. Silva does not dispute that Mayorga was assaulted with a deadly weapon—rather, he contends that the evidence was not sufficient to prove that Silva was the assailant. Mayorga testified that Silva stabbed him with a kitchen knife and identified Silva in court and in a photographic lineup at the hospital. Garcia provided the assailant's phone number, and police traced that number back to Silva. Additional evidence corroborated Mayorga's account of the incident, including that surveillance video captured shouting at the reported time and location of the stabbing; and the Chevrolet Equinox parked at the scene had Silva's palm prints, the same type of beer bottle that was found in Garcia's truck, an identification card bearing the name that Silva provided when he was arrested, and a cell phone with Silva's photograph on the screen. To the extent that Silva has identified inconsistencies or gaps in the evidence, they "were such as would usually be found in the trial of criminal cases"[6] and merely presented factual issues for the jury to resolve.[7]

---

[5] *Suber v. State*, __ A.3d ___, 2026 WL 184867, at *5 (Del. Jan. 15, 2026) (internal quotations omitted).

[6] *Zutz v. State*, 160 A.2d 727, 729 (Del. 1960).

[7] *See Romeo v. State*, 2011 WL 1877845, at *3 (Del. May 13, 2011) ("[M]ere contradictions in trial testimony establish a credibility question for the jury."); *Knight v. State*, 690 A.2d 929, 932 (Del. 1996) ("It is well-settled that the trier of fact is the sole judge of the credibility of the witnesses and responsible for resolving conflicts in the testimony." (internal quotation omitted)); *see also Martinez v. State*, 2002 WL 272358, at *3 (Del. Feb. 22, 2002) ("Martinez is correct that

(13) Silva also argues that his recorded video statement to the police contained an innocent explanation for why he left the scene—he wanted to avoid conflict with his neighbors, because Mayorga and Garcia were arguing and listening to loud music—but his lawyer "cut this video short." This presents an ineffective assistance of counsel claim, which we do not consider on direct appeal.[8]

(14) We have reviewed the record carefully and conclude that Silva's appeal is wholly without merit and devoid of any arguably appealable issue. We also are satisfied that Silva's counsel has made a conscientious effort to examine the record and has properly determined that Silva could not raise a meritorious claim in this appeal.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court be AFFIRMED. The motion to withdraw is moot.

BY THE COURT:

*/s/ Gary F. Traynor*
Justice

---

there was no physical evidence admitted at trial, no gunpowder residue testing performed on his clothing, and no lineup that implicated him as the person who shot Leon. Nonetheless, Leon testified that Martinez pointed a gun at him and shot him, striking and injuring him in the knee and torso. That testimony alone is sufficient to sustain the jury's finding of guilt on the charges of Assault in the Second Degree and Possession of a Firearm during the Commission of a Felony. Martinez' claim of insufficient evidence is without merit." (footnote omitted)).

[8] *See Green v. State*, 238 A.3d 160, 175 (Del. 2020) (stating that the Supreme Court generally does not hear ineffective assistance of counsel claims on direct appeal).